**Daniel Snyder, OSB No. 783856**
dansnyder@lawofficeofdanielsnyder.com
**Paul Bastian, OSB No. 062706**
paul@lawofficeofdanielsnyder.com
**LAW OFFICES OF DANIEL SNYDER**
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
Telephone: (503) 241-3617
Facsimile: (503) 241-2249
        Attorneys for the Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **ELIDA MAEVE**<br>                    Plaintiff,<br><br>            v.<br><br>**CENTENNIAL SCHOOL DISTRICT NO. 28 J**<br>                    Defendant. | Case No. 3:24-cv-01427-SB<br><br>**SECOND AMENDED COMPLAINT**<br><br>UNLAWFUL EMPLOYMENT ACTION<br>FMLA interference, Title VII;<br>Discrimination, Retaliation; Americans<br>with Disabilities Act; and supplemental<br>state law claims<br><br>**JURY TRIAL DEMANDED** |

### I.        PRELIMINARY STATEMENT

1.        This lawsuit is an action for damages and equitable relief, including compensatory

damages, back pay, front pay, and attorneys' fees and costs to redress violation of the Family

Medical Leave Act, Title VII of the Civil Rights of 1964, Title I of the Americans with

Disabilities Act, and Oregon state laws regarding Unlawful Employment Practices.

PAGE 1 – SECOND AMENDED
COMPLAINT AND DEMAND FOR
JURY TRIAL

## II.     <u>JURISDICTION</u>

2.     Jurisdiction is conferred upon this Court by 28 USC §1331, federal question jurisdiction, and 28 USC §1343, civil rights jurisdiction.

3.     Plaintiff requests this Court invoke its supplemental jurisdiction pursuant to 28 USC § 1367 with respect to all causes of action based on Oregon statutory provisions or common law as the state claims arise from the same nucleus of operative facts as the federal claims.

4.     On May 16, 2023, Plaintiff, through counsel, mailed Defendant the statutorily required notice of tort claim under Oregon law.

5.     All preconditions to jurisdiction pursuant to 42 USC §2000e-5 have been satisfied.

    a.     On or about May 25, 2023, Plaintiff filed a perfected administrative complaint with a state agency, the Oregon Bureau of Labor and Industries Civil Rights Division (BOLI CRD). BOLI CRD filed administrative charges under case number EEEMG1230525-10674 for violation of Oregon Unlawful Employment Practices for sex, gender, gender identify sexual orientation, opposing unlawful practices under ORS Chapter 659A, having a disability, invocation of the Oregon Family Leave Act, and whistleblowing. On or about June 29, 2023, said charge was amended at the agency's direction.

    b.     On or about July 17, 2023, Oregon BOLI CRD co-filed a charge of discrimination with the United States Equal Employment Opportunity Commission (EEOC) Charge No. 38D-2023-00691 for violation of Title VII of the Civil Rights Act of 1964 and Title I of the Americans with Disabilities Act of 1990 as amended (ADA).

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

c.    On or about May 14, 2024, BOLI CRD issued Plaintiff a letter notifying Plaintiff that it concluded the investigation and had determined that substantial evidence exists to support Plaintiff's allegations of discrimination by Defendant against her.

d.    On May 31, 2024, BOLI CRD issued a Notice of Suit Rights letter to Plaintiff authorizing her to file a civil rights lawsuit against Defendant.

e.    On July 17, 2024, the Plaintiff requested a right-to-sue letter from the EEOC.

f.    Plaintiff filed this lawsuit within 90 days of the May 31, 2024, BOLI CRD Notice of Suit Rights.

6.    The venue is in the District of Oregon pursuant to 28 USC §1391(b) because the claim arose in this Judicial District.

### III.    PARTIES

7.    Plaintiff Elida Maeve is a transgender woman. Plaintiff is a citizen of the United States. At all times material, Plaintiff worked for Defendant as a science teacher at Centennial High School.

8.    Defendant Centennial School District No. 28 J ("Defendant District") is an Oregon public school district.

9.    During Plaintiff's employment by Defendant, and at all times relevant to this action, the following persons were employed as Defendant's classified employees, teachers, administrators, or principals: former Centennial High School Principal Mairi Scott-Aguirre, successor Centennial High School Principal Marin Miller, Assistant Principal Laura Scully, Assistant Principal Graham Hughes, Assistant Principal Terrance A. Schloth, Assistant Principal Zachary Ramberg, School Security Officer Tarren Sewell, Campus Security Officer Grant

PAGE 3 – SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Law Offices of Daniel Snyder
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

Preuitt, Confidential II Secretary for Human Resources Shannon Burley, Director of Human

Resources and Assistant Superintendent Tasha Katsuda, Desktop Support Technicians Noah

Mabee, Dean of Students Conrad Schumacher, and Director of Student Services and Title IX

coordinator Denise Wright. At all times relevant, the conduct of Defendant's employees,

principals, supervisors, and administrators, as alleged herein, were acts within the course and

scope of their employment with Defendant, including when interacting with and imposing

sanctions on Plaintiff.

10.    At all times material, Jarom Sweazey was a School Resource Officer assigned to

Centennial High School. Officer Sweazey is an employee of the City of Gresham and is assigned

to the Gresham Police Department.

11.    Schools Uniting Neighborhoods (SUN) is a program that extends the school day

and turns schools into community centers. The SUN program is a collaboration between

Metropolitan Family Service (MFS) and Defendant Centennial School District. MFS is a partner

or a subcontractor of Defendant at Centennial High School. MFS has employees embedded at

Centennial High School. At all times relevant to this action, Susan Posner was the Chief Human

Resources Officer at MFS, Damein Roache was the SUN Site Supervisor for MFS at Centennial

High School, and Desiree Gutierrez was a Regional Program Manager for MFS.

**GENERAL FACTUAL ALLEGATIONS ABOUT PLAINTIFF**

12.    Plaintiff has a disability, to wit: one or more long-term and lifetime mental health

disabilities that substantially limit or impair one or more of her major life activities.

13.    At all times material, Defendant regarded Plaintiff as having mental health

disabilities. Plaintiff reported to Defendant that she had mental health disabilities. Plaintiff

requested accommodations for her disabilities and was given the accommodation of "flex time"

by Centennial High School administration. During 2022, Defendant hired a new school principal who denied Plaintiff the previously granted disability accommodations. Defendant then retaliated against Plaintiff because she was disabled and for requesting accommodations. Defendant ultimately fired Plaintiff for pre-textual reasons.

14.     Plaintiff has also been discriminated against and retaliated against based on gender and sexual orientation. Plaintiff is a person whose sex was assigned male at birth (AMAB). Plaintiff has legally, socially, and medically transitioned her gender and presently identifies as a woman or transgender woman. At all times material, Plaintiff's sexual orientation was and is bisexual or pansexual.

15.     While employed by Defendant, Plaintiff made reports of violation of law, to wit, an assault and battery by a student and identify theft by a student. Defendant retaliated against Plaintiff for making those reports.

16.     Plaintiff made reports of workplace discrimination to Defendant regarding treatment she received from employees of Metropolitan Family Service. Defendant retaliated against Plaintiff for making reports of workplace discrimination.

## CHRONOLOGICAL FACTUAL STATEMENTS

17.     In September 2020, Plaintiff, formerly Stephen Hamilton, began working as a science teacher at Centennial High School. Plaintiff taught science for the 2020 and 2021 school year. The Principal of Centennial High School was Mairi Scott-Aguirre.

18.     Defendant invited Plaintiff to return to teach science at Centennial High School for the 2021 and 2022 school year. The Principal during that school year was Mairi Scott-Aguirre.

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

19.    In September 2021, at the start of Plaintiff's second year of teaching at Centennial High School, Plaintiff began altering her gender expression by wearing feminine-coded clothing, painting her nails, and using makeup. Plaintiff identified as a gender nonconforming cis man. On the first day of the 2021/2022 school year, Plaintiff told her students they could use either "Mr." or "Mx." when addressing her. In responding to student questions about the honorific "Mx.," Plaintiff explained that "Mx." is a gender-neutral honorific for those who do not wish to be identified by gender.

20.    On September 7, 2021, during ninth-grade Centennial High School orientation, both Plaintiff and a student, R.A. were harassed based on their gender identities and gender expression. Plaintiff learned that male students had been making offensive remarks about the student, R.A., taking photographs of R.A. at school, posting photographs of R.A. to social media, and perpetuating a rumor that R.A. had tried to kill themselves. While supporting the student, Plaintiff learned that male students were also making fun of Plaintiff for wearing nail polish and were also taking photographs of Plaintiff at school.

21.    On September 13, 2021, Plaintiff emailed Graham Hughes, Assistant Principal and Dean of Students at Centennial High School, and Assistant Principal Laura Scully, Plaintiff's supervisor and evaluator, to report a harassment and bullying problem in her classroom. Graham Hughes emailed that he would speak with R.A. and hoped to get to the bottom of the situation.

22.    Because of Plaintiff's feminine, gender nonconforming attire, Plaintiff felt unwelcome in both the male and female-gendered restrooms at Centennial High School typically used by students. Plaintiff also felt uncomfortable using the male and female-gendered staff restrooms and they were too far away from her classroom to utilize during the short passing

PAGE 6 – SECOND AMENDED
COMPLAINT AND DEMAND FOR
JURY TRIAL

times. The locking single-stall restroom in the main office was equally as far away from the staff restrooms. Plaintiff had a key to access a secured restroom at the school used by some faculty members, but it was not open to students. Plaintiff used the secured restroom for privacy and safety.

23.     On October 13, 2021, Plaintiff unlocked the secured restroom at Centennial High School. A teenage male student followed Plaintiff into the restroom with his phone out. Plaintiff felt uncomfortable with the student's intrusion and asked the male student to leave the restroom. The student refused Plaintiff's directive to leave the restroom. Plaintiff then started to exit the restroom. As Plaintiff exited the restroom, the male student committed an assault and battery on Plaintiff by deliberately striking Plaintiff's shoulder with the student's shoulder, which was an offensive battery by the student on Plaintiff.

24.     On October 13, 2021, Plaintiff requested that school security respond to the male student's assault, battery, and bias crime committed against her. Tarren Sewell, a school security team member, responded to the Plaintiff. Tarren Sewell took notes of Plaintiff's account of the incident. Tarren Sewell identified the identity of the male student who struck Plaintiff as a student at the school. Tarren Sewell asked Plaintiff to write an incident report and email it to her. After Plaintiff emailed her incident report regarding the assault and battery to Tarren Sewell, Tarren Sewell replied, "Thank you [Elida]. I'm taking it to the proper channels." On October 14, 2021, Plaintiff asked Tarren Sewell for an update on the October 13, 2021, assault and battery incident.

25.     In 2021, Plaintiff learned that her and her partner's child would be born in December 2021. On October 26, 2021, Plaintiff emailed Shannon Burley, Defendant's Confidential II Secretary for Human Resources, regarding her need for parental work leave,

informing them that the due date for the birth of her child was December 7, 2021, and that

Plaintiff's parental leave would start the Monday following Spring Break.

26.     MFS has after-school classes at Centennial High School through its SUN

program. On October 28, 2021, MFS paid Plaintiff on a part time basis to serve as an advisor and

Activity Leader to the Gender and Sexuality Alliance (GSA) through the MFS SUN program.

GSA is a club meant to provide support, community, and activism opportunities for queer

students, staff, and allies at Centennial High School.

27.     On November 30, 2021, Jimmy Mei, Activities Director, Student Council

Advisor, and Boys Tennis Head Coach at Centennial High School, escorted a female high school

student to Plaintiff's classroom. Jimmy Mei encouraged the female student to show Plaintiff an

image of an Instagram account on his mobile device. When the reporting student displayed the

Instagram account, Plaintiff saw that the account contained posts from a person who had stolen

Plaintiff's identity and was impersonating Plaintiff on Instagram, which is a crime. The false

account contained a face photo of Plaintiff and identified Plaintiff as "Nonbinary Hamilton,"

"Mr. Hamilton," a "patterns physics teacher." The account listed Plaintiff's pronouns as

"she/him" and "nonbinary." One of the account postings on the false account was a photograph

of Plaintiff interacting with student R.A. The photograph's vantage point showed that the image

of Plaintiff and the student, R.A., was taken from a few feet behind where Plaintiff was assisting

the student. The photograph showed Plaintiff wearing a skirt. The caption for the photograph was

"Rate the drip 1-10." The word "drip" refers to someone looking stylish. The post is sarcastic,

inviting commenters to react negatively to Plaintiff's gender-nonconforming outfit. Plaintiff

discovered that the false account was created by another male student at Centennial High School.

The false account was being followed by and was also following the account of other Centennial

High School students, many of whom were Plaintiff's current students, and included the student who had committed the assault and battery on Plaintiff in the restroom. After meeting with Jimmy Mei and the reporting student, Plaintiff complained to Mairi Scott-Aguirre, Principal of Centennial High School, that students had stolen Plaintiff's identity and set up a false Instagram account.

28.    Plaintiff also made a report of both the assault and battery crime in the restroom and the theft of her identity to the police. On December 1, 2021, Jarom Sweazey, School Resource Officer, Gresham Police, emailed Plaintiff after-hours, notifying Plaintiff about the Instagram account impersonating Plaintiff, the same account she had already reported to Principal Scott-Aguirre. On December 2, 2021, Plaintiff responded to the December 1, 2021, email sent by Officer Sweazey. Plaintiff reported the October 13, 2021, incident with a male student in the restroom as an assault, battery, and bias crime. Plaintiff also reported that this male student was following a false Instagram account that was impersonating Plaintiff. Plaintiff wrote that the account's existence made her feel even more unsafe using the restroom at school. Officer Sweazey emailed Plaintiff, writing that Oregon Revised Statute 166.155 Bias Crime in the Second Degree might apply to the student who had confronted Plaintiff in the bathroom.

29.    On December 4, 2021, Plaintiff's son was born. On December 7, 2021, Plaintiff emailed Shannon Burley notifying Shannon Burley of her son's birth, her intention to use paid time off to take time off from work immediately after the birth, and information about starting parental leave in February and March 2022.

30.    On January 10, 2022, Plaintiff announced to each of her classes that she was officially using "Mx." as her honorific and "they" and "them" pronouns exclusively. Plaintiff also began informing staff members of the changes.

PAGE 9 – SECOND AMENDED
COMPLAINT AND DEMAND FOR
JURY TRIAL

31.    In January 2022, a male student who was walking with other male students in the halls shouted at Plaintiff the derogatory and homophobic slur "faggot!" Plaintiff reported the student's abuse as bias against her to Grant Preuitt, Campus Security officer. Officer Preuitt said he would check the surveillance footage and reply to Plaintiff. Officer Preuitt later identified the male student to Plaintiff as student "S."

32.    On January 27, 2022, Vice Principal Terrance A. Schloth emailed Plaintiff. Terrance Schloth wrote that he had been speaking with Principal Mairi Scott-Aguirre about consequences for the student who shouted "faggot" at her. The administration suggested mediation between Plaintiff and the student. Administration rescheduled the mediation several times because the student would not participate. Ultimately the student admitted in a meeting that he called Plaintiff a faggot to look cool in front of his friends.

33.    In late February and early March 2022, Plaintiff had several meetings with Laura Scully. Plaintiff informed Laura Scully that she was struggling to perform her job duties due to the many instances of harassment and bullying. Ms. Scully said, "Well, do you really need to be doing all that?" referring to the complaints of harassment and bullying.

34.    On March 15, 2022, Laura Scully emailed Plaintiff, she wrote that she spoke with Shannon Burley at the District Office, and Ms. Burley told Ms. Scully that the District Office had not received the leave paperwork. She wrote "Shannon told me she emailed the request form in October…" yet the District had taken no steps to try to secure a substitute for Plaintiff's absence.

35.    On March 27, 2022, Plaintiff emailed Shannon Burley asking if her requested parental leave had been approved. When Plaintiff did not receive a response soon afterward, Plaintiff sent another email with the same question to Dr. Tasha Katsuda, Director of Human

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

Resources and Assistant Superintendent at Defendant District. Dr. Katsuda replied that

Plaintiff's parental leave was not approved. Dr. Katsuda claimed that the District denied parental

leave to Plaintiff because Plaintiff did not "provide 30 days advance notice of the leave," which

was inaccurate. Plaintiff notified Defendant of her need for parental leave in October and

December 2021. On March 28, 2022, Shannon Burley sent an email to Plaintiff. Shannon Burley

repeated that Plaintiff's parental leave was not approved. It was not until April 10, 2022, when

Dr. Katsuda approved Plaintiff to have parental leave as Family Medical Leave to begin on April

18, 2022, and end on May 16, 2022.

36.    On April 14, 2022, just before Plaintiff left on parental leave, Laura Scully

emailed Plaintiff, writing that she needed to meet with Plaintiff after school that same day for a

fact-finding meeting for attendance and punctuality, which could lead to disciplinary action. At

the meeting, Plaintiff explained that she had challenges to her attendance, which were Plaintiff's

gender transition, difficulties in coordinating childcare, the harassment Plaintiff had experienced

at school, and her mental health disability. Plaintiff requested that Laura Scully excuse Plaintiff's

absences for those reasons, including as an accommodation for her disability. During this

meeting, Laura Scully misgendered Plaintiff by using "he" and "him" pronouns when referring

to her. After several instances of being misgendered, Plaintiff attempted to correct Ms. Scully's

misgendering of her. Laura Scully abruptly ended the meeting without completing a fact-finding.

37.    On April 15, 2022, Ms. Scully emailed Plaintiff, directing her to meet again that

day. Ms. Scully directed Plaintiff to leave behind her work computer before starting FMLA

leave. On April 15, 2022, Ms. Scully and Assistant Principal Zachary Ramberg met with Plaintiff

and a witness, Rowena Poirier, in Ms. Scully's office to discuss issues of punctuality and

attendance. At the start of the meeting, Ms. Scully said, "Before we begin, I just want to say,

Law Offices of Daniel Snyder
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

here, in front of everyone, that I misgendered you yesterday in our meeting, and so, again, in front of everyone, I would just like to apologize to you." In responding to Assistant Principal Scully's concerns about attendance and punctuality, Plaintiff again listed her challenges, including harassment at school, her mental health disability, and her childcare concerns. Then Ms. Scully handed Plaintiff a written Letter of Expectation regarding Plaintiff's arrival time, absence reporting, and meeting participation. Ms. Scully said that the document would not be in the District's personnel file but in the "working file" for the 2021/2022 school year. Ms. Scully offered Plaintiff the opportunity to use flex time to cover tardiness and attendance. Scully said she would formally put that process in place. Plaintiff accepted Laura Scully's offer and believed she had flex time as a disability accommodation.

38.    On April 18, 2022, the day Plaintiff's parental leave began, Plaintiff and Plaintiff's former domestic partner arrived at Providence St. Vincent Medical Center to admit their son to immediate care for upper respiratory symptoms. On April 18, 2022, Plaintiff received a telephone call from Susan Posner, Chief Human Resources Officer at Metropolitan Family Services, about Plaintiff's parental leave. Ms. Posner told Plaintiff that if Plaintiff was going to take parental leave, then Plaintiff had to resign as the GSA advisor. Plaintiff explained to Ms. Posner that Plaintiff would remain involved with the GSA remotely and promised to return to her advisor role when she was done with her leave. Susan Posner insisted that Plaintiff resign and re-apply to work as the GSA advisor after she returned from parental leave. Ms. Posner cautioned Plaintiff that the advisor position would likely be filled by then. During this conversation, Plaintiff told Ms. Posner that Plaintiff would like to formally complain about the SUN Site Supervisor, Damein Roache. Plaintiff reported Damein Roache had an overbearing nature, followed her through the halls of Centennial High School to talk with her, interrupted her

in her classroom during instructional time, consistently misgendered her by using the wrong pronouns, and had misgendered another teacher, Aidan Muth, and had misgendered students who attended GSA meetings.

39.    On April 18, 2022, following the telephone call between Susan Posner and Plaintiff, Susan Posner emailed Plaintiff, writing that given Plaintiff's position as an advisor for the GSA was temporary and part-time, she was not eligible for leave with MFS. Susan Posner provided a letter with instructions on how to resume employment with MFS when she returned from leave.

40.    While Plaintiff was on parental leave, Damien Roache told other teachers that if Plaintiff attempted to attend a GSA meeting, he needed to be informed right away.

41.    On May 16, 2022, Plaintiff's FMLA parental leave ended. Plaintiff returned to her position as a Science Teacher at Centennial High School. Plaintiff requested a joint meeting between advisors Jade Robinson and Aidan Muth, Damein Roache, and herself. During the joint meeting, Damein Roache told Plaintiff that former employees of MFS were not allowed to attend SUN activities. Plaintiff asked Damein Roache, "If I had never been an employee, could I attend the GSA meetings?" Damein Roache said, "Yes."

42.    On May 20, 2022, Plaintiff met with Principal Mairi Scott-Aguirre to discuss the enormous amount of stress Plaintiff was experiencing due to the ongoing gender harassment issues at the school from students and Damein Roache and that she was having severe and new symptoms. On May 20, 2022, Plaintiff reported to Mairi Scott-Aguirre that MFS discriminated against her and requested a facilitated mediation meeting between Damein Roache and Plaintiff as soon as possible. Mairi Scott-Aguirre told Plaintiff it was unlikely she could arrange a

mediation before the end of the school year. Instead of addressing the problems at work, Marie Scott-Aguirre told Plaintiff to consider taking FMLA leave.

43.     On May 20, 2022, Plaintiff emailed Shannon Burley regarding taking leave. On May 23, 2022, Shannon Burley emailed Plaintiff regarding parental leave. Shannon Burley wrote that parental leave cannot be intermittent and must be in one continuous block of time. Shannon Burley also wrote that she would forward Plaintiff's email to Assistant Superintendent Katsuda for her to review. On May 23, 2022, Assistant Superintendent Katsuda emailed Plaintiff, writing that Human Resources could not approve intermittent parental leave but that Plaintiff could request unpaid leave for "Health or Unavoidable Circumstances." Defendant and Dr. Katsuda failed to notify Plaintiff that under OFLA, a parent can take up to twelve weeks of time off per year for parental leave and twelve more weeks for sick child leave.

44.     On May 23, 2022, Principal Mairi Scott-Aguirre emailed Plaintiff to follow up on their May 20, 2022, meeting regarding Plaintiff's GSA participation. In this email, Mairi Scott-Aguirre wrote, "I do not want you to participate (in the GSA) until there has been a facilitated meeting between you and Damein [Roache]. I don't anticipate being able to get that done before the next school year." On May 25, 2022, Mairi Scott-Aguirre emailed Plaintiff about a mediation between Damein Roache and Plaintiff with Conrad Schumacher, interim Dean of Students and Assistant Principal, as mediator. Mairi Scott-Aguirre also wrote, "I need to reiterate that you may not attend GSA meetings until after the mediation has been successfully completed."

45.     On May 25, 2022, Mairi Scott-Aguirre emailed Plaintiff, writing that if Plaintiff had a serious health condition, she had eight weeks of Family and Medical Leave Act eligibility. That day, Mairi Scott-Aguirre signed the District's FMLA form for Plaintiff to take leave for her own serious health condition. On May 25, 2022, Plaintiff emailed Assistant Superintendent

Law Offices of Daniel Snyder
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

Katsuda, copying Shannon Burley, writing, "I have Mairi [Scott-Aguirre's] approval for FMLA

leave for Serious Health Concern. I got the form yesterday, and Mairi signed it this afternoon. I

will bring it to the District Office after school. My leave would begin Monday, May 30, 2022,

and would continue through the end of the school year. I'm requesting reduced leave. I would

not be working Mon (sic), Tue (sic), or Wed (sic), and Georgia Paulk has agreed to cover these

days. I would still work on Thur (sic) and Fri (sic)." That afternoon, Plaintiff arrived at

Defendant's administrative office and handed the FMLA form to a Human Resources

representative.

46.     On May 27, 2022, Assistant Superintendent Katsuda sent an email, copying

Shannon Burley, writing that she was providing an update "in consideration of [Maeve's] request

for a response as soon as possible." Assistant Superintendent Katsuda wrote that she requested

and was waiting for a "response from counsel" and "will not hear back until next week." Dr.

Katsuda wrote that until Plaintiff's leave request was confirmed, "your leave request is in

process and is not approved." On May 27, 2022, Plaintiff responded to Dr. Katsuda and Shannon

Burley, saying, "Have you explained that this is absolutely urgent? I cannot wait until next week.

I have a sub available to cover me, so I don't understand why it would take that long."

47.     On May 31, 2022, at 7:33 a.m., Shannon Burley emailed Plaintiff, writing that

Human Resources had received Plaintiff's request for Family Medical Leave/Oregon Family

Leave for her serious health condition, "Unfortunately, when you requested the FMLA/OFLA

Request form, it was not communicated that you would be requesting medical leave for

yourself." Shannon Burley instructed Plaintiff to forward the attached "Certification of Health

Care Provider for Employee's Serious Health Condition" form to Plaintiff's healthcare provider

"so it may be completed and returned to the Human Resources Department." Shannon Burley did

PAGE 15 – SECOND AMENDED
COMPLAINT AND DEMAND FOR
JURY TRIAL

not write in her email that the absence of this form would further delay the start of Plaintiff's leave. Plaintiff emailed Shannon Burley and wrote that she had forwarded the form to her healthcare provider.

48.     On June 3, 2022, Plaintiff emailed Dr. Katsuda and Shannon Burley, copying Mairi Scott-Aguirre and Laura Scully, requesting an update regarding her request for Family Medical Leave based on her own serious health condition. Plaintiff wrote, "Due to the issues surrounding the district's denial of my initial request for FMLA in March 2022 despite my written notice given in October 2021, I felt that at this time it was in my best interest to secure a long-term sub in advance of my request so that I would not have a repeat of my stressful experiences in March and April." Plaintiff wrote, "I'm at a loss with the hoops I've had to jump through to accomplish what should be a fairly straightforward process. I have an urgent need for leave. I found a sub who can cover for me. I have run out of sick leave and personal leave. This is unpaid leave. Why is it taking so long for this to get done?" Plaintiff also wrote, "This current request for leave has been even more stressful and difficult to arrange than the last. The process of arranging leave is exacerbating my stress and mental health problems, which is the very reason that I am requesting leave for (sic) the first place." Plaintiff finished the email by writing that she was requesting full-time medical leave until the end of the school year and that Plaintiff would like a response by the end of the day, June 3, 2022. On June 3, 2022, Dr. Katsuda emailed Plaintiff, writing that FMLA for a serious health condition had been approved "based on the information received."

49.     On June 6, 2022, while Plaintiff was on medical leave, Laura Scully emailed Plaintiff, writing that Ms. Scully was getting calls and messages from students and parents

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

regarding grades. Laura Scully wrote, "Their anxiety is complicated by your absence and inability to talk with you about how to improve their grades before the semester ends."

50.    In June 2022, Centennial High School Principal Mairi Scott-Aquirre retired. On July 1, 2022, Marin Miller became the Principal of Centennial High School. Marin Miller, a cisgender, heterosexual male, replaced Assistant Principal Laura Scully as Plaintiff's supervisor and evaluator.

51.    On August 17, 2022, Plaintiff emailed Shannon Burley, writing, "I will be back to work this fall and intend on working the entirety of the 2022/23 school year." On August 19, 2022, at 11:35 a.m., Shannon Burley emailed Plaintiff, writing, "It is good to hear that you will return to work for the 2022-2023 school year."

52.    On August 26, 2022, at 9:29 a.m., Plaintiff emailed Shannon Burley a return-to-work letter signed by her therapist. Plaintiff wrote, "Attached is my return to work letter." At 9:34 a.m., Plaintiff emailed Shannon Burley again, attaching a Certification of Health Care Provider for Family Medical Leave Act/Oregon Family Leave due to a serious health condition. Plaintiff wrote, "Attached is my certification from my health care provider."

53.    On August 28, 2022, at 11:41 a.m., Assistant Principal Laura Scully emailed Tami Virell, Executive Assistant Secretary for Human Resources at Centennial High School, Principal Miller, and Assistant Superintendent Katsuda. Assistant Principal Scully wrote that she was "Unable to complete the second-year probationary evaluation cycle for [Elida Maeve] due to intermittent absences and two successive leaves that ran through the end of the 2021-22 school year." Laura Scully wrote that she completed the Summative Evaluation form to the best of her ability "given the circumstances" and that she would recommend that Plaintiff "repeat the Probationary 2 Cycle in the 2022-23 school year."

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

54.     On August 30, 2022, Defendant released staff, student, and family perception survey results for Centennial High School. The survey results were shared with staff during pre-service workdays preparing for the school year. Student comments were included in the survey results. Many students talked about issues of bullying, racism, sexism, and homophobia at the school. The most extended comment was from a transgender male student describing the harassment and bullying he encountered, including a threat to his life.

55.     On September 12, 2022, Plaintiff emailed Centennial High School Dean of Students Conrad Schumacher regarding Damein Roache and the exclusion of Plaintiff from attending GSA meetings. Plaintiff copied Principal Miller, Damein Roache, and Daunte Gouge. Daunte Gouge and Marin Miller came to Plaintiff's classroom to discuss the email. Plaintiff explained to Daunte Gouge and Marin Miller that she was being subjected to gender discrimination by Mr. Roache. Plaintiff recommended that because of the bias shown by Mr. Roache and MFS toward her, GSA become a regular school club rather than falling under the SUN school umbrella. Plaintiff also told Mr. Miller and Mr. Gouge during this meeting that she believed that the Centennial School District might be violating the Equal Access Act since participating in any SUN activity requires the student to obtain their parents' signature on multiple pieces of paperwork.

56.     On September 13, 2022, Principal Miller emailed Damein Roache, Assistant Principal Carl Reinhold, and Plaintiff to meet and discuss issues surrounding Plaintiff's involvement in the GSA. They met that afternoon, along with MFS Regional Program Manager Desiree Gutierrez. During the meeting, Plaintiff said that since May 2022, she had been working towards the resolution of MFS' exclusion of her from GSA. During the meeting, Plaintiff discussed an email that Damein Roache sent to the former Centennial High School Principal,

Mairi Scott-Aguirre, in which Roache made a false claim about Plaintiff. Desiree Gutierrez

responded that Plaintiff was welcome to apply as a volunteer but not as an employee of MFS.

Principal Miller said that Plaintiff would not be allowed to attend the GSA meetings until

volunteer forms had been processed and Plaintiff had permission from MFS to attend the GSA

meetings.

57.     On September 13, 2022, Damein Roache approached Plaintiff and asked if he

could speak to Plaintiff. Damein Roache said that he and the other meeting attendees discussed

the situation more and agreed that Plaintiff offered the club a unique perspective, without which

the club would be worse off, and that Plaintiff was an asset they did not want to lose. Damein

Roache said Plaintiff did not need to wait for Desiree Gutierrez's email approving her attendance

at G.S. meetings as a volunteer. Roache told Plaintiff that if she filled out the volunteer

paperwork and turned it in by the end of the week, then Damein Roache would have no problem

with Plaintiff attending meetings, effective immediately. Damein Roache ended the meeting by

saying to Plaintiff, "Thanks, man." Plaintiff replied, "Nope. Not a man.'"

58.     On September 14, 2022, Plaintiff filled out the MFS volunteer forms and dropped

the forms off in MFS' SUN room at the school. On September 14, 2022, Plaintiff learned that

Eric Bates, a Centennial High School teacher and cisgender male, had not been required to

submit any volunteer paperwork before he attended a September 13, 2022, GSA meeting.

59.     On September 15, 2022, because Plaintiff had completed the volunteer forms and

submitted those to MFS, she joined the GSA in Room 133 for the club meeting. Damein Roache

directed Plaintiff to leave the meeting and go into the hall. Damein Roache told Plaintiff that she

had missed completing one page of the submitted volunteer paperwork. Plaintiff explained that

she had just made a mistake by overlooking the page. Plaintiff told Roache that she would

Law Offices of Daniel Snyder
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

complete the missing page immediately. While meeting with Damein Roache, Plaintiff told him

that she was concerned about SUN's requirement that advisors and students sign a photo and

voice recording release form because involvement in GSA could be a privacy concern for

students who had not come out. Damein Roache became irritated and said, "Why does it always

have to be so many questions with you all the time?" Plaintiff responded that she thought the

privacy issues were important and that it was worth clarifying these issues to comply with the

Equal Access Act, and for the sake of the privacy of students and staff involved in GSA. Damein

Roache then commented to another teacher, Jade Robinson, "He (sic) is arguing and asking a

bunch of questions." Plaintiff asked Damein Roache to use her correct pronouns when speaking

to her or about her. Damein Roache continued to misgender Plaintiff during that conversation.

Damein Roache ended the conversation by saying that if Plaintiff did not complete the missing

page by Friday, she could not attend future GSA meetings.

      60.     On September 16, 2022, Plaintiff completed the missing page of the MFS

volunteer paperwork and delivered it to the MFS' SUN room at the school.

      61.     On September 19, 2022, Desiree Gutierrez knocked on Plaintiff's classroom door

at 3:15 p.m., approximately five minutes after the last class of the day ended. Plaintiff spoke with

Ms. Gutierrez at the door. Ms. Gutierrez told Plaintiff that she could not attend GSA meetings

until Ms. Gutierrez had another meeting with Plaintiff and the volunteer paperwork had been

officially processed.

      62.     On September 20, 2022, at 3:07 p.m., Plaintiff made a written report of Title IX

violation to Denise Wright, Director of Student Services and Title IX coordinator for Defendant,

reporting concerns at school, including discrimination and harassment concerning SUN and the

GSA, and requesting a meeting with Denise Wright to discuss these issues. Plaintiff's email

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

included references to some of the bias incidents Plaintiff had experienced, concerns with the administration's response to those reports, and problems with the Centennial High School Human Resources department declining Plaintiff's request for parental leave. Plaintiff wrote that MFS had retaliated against her and Damein Roache's continuing misgendering, referring to Plaintiff with the wrong pronouns.

63.    On September 20, 2022, Principal Miller emailed Plaintiff, directing Plaintiff to meet with him regarding Plaintiff's involvement with the GSA. On September 20, 2022, at approximately 3:30 p.m., Plaintiff was approached by Damein Roache in the hallway outside of the SUN room. Plaintiff asked if she could attend that day's GSA meeting and listen to the speaker. Damein Roache said she could not attend the meeting because "you did not follow the rules" and because of "privacy concerns." Damein Roache repeatedly directed Plaintiff to call Desiree Gutierrez. Plaintiff then called Desiree Gutierrez, who told Plaintiff that Plaintiff could not attend the GSA meeting because Plaintiff was a safety concern. Plaintiff asked Desiree Gutierrez how she could be safe to work with Centennial High School students all day, but a minute after school ended, she was no longer safe around Centennial High School students. Desiree Gutierrez did not address that question but said that because Plaintiff did not seem to follow the rules, MFS had no volunteer opportunities for Plaintiff to take.

64.    On September 21, 2022, Plaintiff emailed Director of Student Services and Title IX coordinator Denise Wright, summarizing the discrimination she was experiencing from Damein Roache and Desiree Gutierrez, who prohibited Plaintiff from attending the GSA meetings. On September 21, 2022, Plaintiff confirmed that SUN clubs such as GSA were Associated Student Body (ASB) organizations subject to the same rules as official Centennial High School clubs.

PAGE 21 – SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

65.     On September 22, 2022, Plaintiff left her classroom at the end of the day. An educational assistant, Rylee Poirier, walked east with Plaintiff in the South Hallway. Rylee Poirier told Plaintiff that MFS had lost Rylee Poirier's volunteer paperwork. Still, Damein Roache was allowing Rylee Poirier to attend GSA meetings as a volunteer mentor because he said he "felt bad for her." As Plaintiff continued walking toward the exit with Rylee Poirier, they encountered Aidan Muth in the hallway. Aidan Muth, Rylee Poirier, and Plaintiff began chatting in the hallway. They were then interrupted by Damein Roache, who asked Plaintiff if he could speak with Plaintiff privately. Damein Roache reprimanded Plaintiff for chatting in the hallway and "not supervising the students." Desiree Gutierrez joined Mr. Roache. Both Damein Roache and Desiree Gutierrez then accused Plaintiff of "interfering with SUN meeting and pulling (Aidan) Muth away from their duties." Mr. Roache and Ms. Gutierrez told Plaintiff she was not allowed in the GSA room. Plaintiff replied that she had not entered the classroom where the GSA meeting was occurring and was not even attempting to do so. The plaintiff explained that she would pick up her son from daycare, that she was on her way to her car, and that she had stopped to talk with Mx. Muth on her way out. Desiree Gutierrez told Plaintiff that her repeated requests and attempts to attend meetings were "concerning." Plaintiff asked them why she was a "concern" when she had only ever expressed a desire to support the students. Desiree Gutierrez replied that she needed to "ensure the safety of the students." Plaintiff told Desiree Gutierrez that as a teacher at the school, she was free to travel the hallways and talk to teachers and students as she pleased. Desiree Gutierrez said, "That's irrelevant." Desiree Gutierrez said that SUN school does not have room for people who do not follow the rules. Plaintiff then reminded Desiree Gutierrez that Plaintiff had completed the volunteer paperwork the prior week, as requested, and that Rylee Poirier was allowed to attend the meetings. However, SUN had misplaced Rylee

Law Offices of Daniel Snyder
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

Poirier's volunteer paperwork before Rylee Poirier began attending GSA meetings. Damein Roache then shouted, "Security! Tarren!" Tarren Sewell walked towards the group some distance down the hallway. As Tarren Sewell approached, Damein Roache asked Tarren Sewell to radio Principal Marin Miller. Then Damein Roache and Desiree Gutierrez told Plaintiff that Plaintiff was not allowed to be in the school hallway. Plaintiff told Mr. Roache and Ms. Gutierrez they had no authority to tell her where she could and could not be. Desiree Gutierrez told Plaintiff that Plaintiff was "escalating things" and that Desiree Gutierrez "has to ensure the safety of students in the club." Marin Miller approached the group and directed Plaintiff outside the building with him. Plaintiff briefly explained to Marin Miller what happened and that Mr. Roache and Ms. Guiterrez were causing conflict. Marin Miller told Plaintiff to write an incident report and send it to him. Marin Miller then walked back inside.

66. On September 23, 2022, Marin Miller emailed Plaintiff and requested that she arrange to meet with him regarding complaints made by Damein Roache and Desiree Gutierrez about Plaintiff. Plaintiff replied to the email, writing that she would address Damein Roache and Desiree Gutierrez's concerns and "bring up some of my own, including retaliatory behaviors, which began after I resigned from MFS last school year and have increased in frequency and severity leading up to yesterday's conversation. I have attempted on multiple occasions to arrange mediation to resolve these problems, which, again, are the result of hearsay and are completely false."

67. On September 25, 2022, MFS Chief Human Resources Officer Susan Posner emailed Plaintiff regarding Plaintiff's application to volunteer with MFS. In a letter attached to the email, Susan Posner wrote that Plaintiff's volunteer application had been rejected based on violating the MFS code of ethics on September 22, 2022. Susan Posner falsely claimed that

Law Offices of Daniel Snyder
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

Plaintiff shook her fist and swore at Damein Roache and Desiree Gutierrez. At the end of the letter, Susan Posner wrote, "The entire purpose of GSA is to promote a welcoming and safe environment for LGBTQIA2S+ students. Your actions above indicate that we cannot entrust you with creating such an environment."

68.     On September 26, 2022, Plaintiff forwarded Susan Posner's email and letter to Marin Miller and wrote, "I would like to discuss this letter from MFS as soon as possible with you." On September 26, 2022, Plaintiff and Marin Miller met in Miller's office. Marin Miller responded that he had received and read Susan Posner's letter. Marin Miller said he was investigating the September 22, 2022, incident and said his primary concern is "whether or not the person (Plaintiff) is good for kids." Marin Miller gave Plaintiff a signed copy of a formal complaint made by Damein Roache and directed Plaintiff to sign an acknowledgment that she had received the complaint. On September 26, 2022, Marin Miller emailed Plaintiff a request to meet on September 29, 2022, as part of an investigation into Damein Roache's complaint about their September 22, 2022, interaction.

69.     On September 28, 2022, Plaintiff met with the Director of Student Services, Denise Wright, to discuss ongoing harassment, discrimination, and retaliation against Plaintiff and the hostile work environment she was experiencing. During this meeting, Plaintiff reported to Denise Wright that Susan Posner and Damein Roache retaliated against her. Plaintiff reported to Denise Wright that Principal Marin Miller was also retaliating against her.

70.     On September 29, 2022, Plaintiff met again with Marin Miller. During that meeting, Plaintiff again made reports of gender and sex bias incidents and crimes she had experienced in the previous school year, including a student stealing her identity with a false Instagram account, the homophobic slur shouted at her by a student, and the assault on her in the

Law Offices of Daniel Snyder
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

bathroom at school. Marin Miller took notes of Plaintiff's reports but was otherwise completely

silent, not responding to validate or deny Plaintiff's reports or sympathize with her.

71.     On October 3, 2022, Marin Miller emailed Plaintiff. He wrote that the District

hired a private investigator to investigate the issues Plaintiff had raised regarding bias incidents

at the school. Marin Miller said Plaintiff could file a formal written complaint against any

District employees involved in those incidents. Plaintiff sent an email asking about the status of

Marin Miller's investigation of the complaint filed against her by Damein Roache. Plaintiff did

not receive a response to that email. On October 4, 2022, Plaintiff sent another follow-up email

to Marin Miller asking again about the status of the investigation resulting from Damein

Roache's complaint.

72.     On October 5, 2022, Defendant signed a collective bargaining agreement or

contract with Plaintiff's union. The signers to the agreement were the East County Bargaining

Council, Centennial Board of Education, and Centennial Education Association. Defendant's

contract with the Education Association required the District to establish a Program of

Assistance to identify specific deficiencies, expectations, corrective steps, additional District

resources with timelines for the plan and how the success of the plan will be measured.

Defendant and Marin Miller did not establish a Program of Assistance before terminating

Plaintiff's employment.

73.     On October 5, 2022, Principal Miller gave Plaintiff a Letter of Expectation. Marin

Miller wrote that based on the evidence, Marin Miller did "not find that [Plaintiff's] behavior

[with Roache] constitutes harassment or bullying behavior. Although I cannot fully substantiate

the severity of the concern based on the evidence, your conduct can be considered unprofessional

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

during the interaction." Marin Miller's expectation was that Plaintiff would have to stay clear of areas in the school where GSA was meeting.

74.     On October 5, 2022, at 10:19 p.m., Clinton Fella, a person whom Defendant District hired to investigate Plaintiff's reports of bias against her, emailed Plaintiff to set up a time for a telephone interview. Clinton Fella had the business Clint Fella Investigations and Consulting.

75.     On October 6, 2022, Plaintiff emailed Secretary Maria Martinez, informing her that Plaintiff's son was ill and that Plaintiff would need to take a half day but could not log into Frontline, the District's absence management system. Plaintiff requested that Maria Martinez enter her as absent.

76.     On October 13, 2022, at 7:35 a.m., Marin Miller emailed Plaintiff, directing Plaintiff to schedule a meeting with him before the end of the day, Monday, October 17, 2022. Marin Miller wrote that she was welcome to bring a union representative, indicating he contemplated disciplining Plaintiff.

77.     On October 14, 2022, at 8:30 a.m., the day after Marin Miller noticed Plaintiff he was considering disciplining her, Marin Miller entered Plaintiff's classroom for a "mini observation" of her period 1 Patterns Physics lesson. This was the first time Marin Miller observed Plaintiff teaching. This lesson involved a worksheet titled "What do they mean?" as a learning activity for students to strengthen their skill with interpreting position versus time and velocity versus time motion graphs and communicate their meaning in written form with proper academic and scientific vocabulary. Marin Miller exited the classroom at 8:43 a.m. At 2:59 p.m. that day, Marin Miller emailed Plaintiff a formal Google calendar invitation to a meeting on Monday, October 17, 2022, from 1:00 p.m. to 1:30 p.m.

Law Offices of Daniel Snyder
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

78.     On October 15, 2022, Amanda Kassab, President of the Centennial Education

Association (CEA), wrote in an email to Plaintiff that she had spoken to Principal Marin Miller

to understand his goals for this investigation better. Amanda Kassab told Plaintiff that Marin

Miller was concerned that Title IX violations were being committed at school both against

students and Plaintiff.

79.     On October 15, 2022, at around 4:00 p.m., Clinton Fella interviewed Plaintiff by

Zoom. Clinton Fella did not conclude the call until approximately 7:00 p.m., three hours later.

80.     On October 17, 2022, Plaintiff met with Principal Marin Miller. During that

meeting, Marin Miller criticized Plaintiff's punctuality and attendance. During that meeting,

Plaintiff told Marin Miller about her childcare issues, her need to miss work for her child's

illnesses, her disabilities, and how her disabilities contributed to her arrival times to work.

81.     On October 17, 2022, Plaintiff made a verbal report to Tarren Sewell, Campus

Security, that a sign for a school club, the Queers and Allies club, had been removed from its

place beside her classroom door. Plaintiff then sent an email to Marin Miller reporting that a sign

for the Queers and Allies club had been removed from its place beside her classroom door.

Plaintiff copied teacher Luke Gaynor, Tarren Sewell, and Assistant Principal Schloth. On

November 15, 2022, Plaintiff forwarded this email thread to Clinton Fella, along with photos she

took from the same angle as the security camera in that hallway.

82.     On October 18, 2022, Plaintiff was teaching her fifth-period class. At 2:36 p.m.,

Principal Marin Miller entered Plaintiff's classroom for a second "mini observation" of her

period 5 Patterns Physics lesson. Marin Miller exited her classroom at 2:48 p.m. After Marin

Miller left the classroom, a student walked out without Plaintiff's permission. Plaintiff tried to

locate the student. Unknown to her, Joey Massey, the security guard, sent the student to detention without notifying Plaintiff that he had done so.

83.     On October 19, 2022, at 7:30 a.m., Plaintiff arrived at work and attended the Interdepartmental Professional Learning Community meeting. After five to ten minutes, Assistant Principal Cal Reinhold interrupted the meeting and directed Plaintiff into the hallway. Cal Reinhold informed Plaintiff that Principal Marin Miller wanted to see Plaintiff immediately in his office. Plaintiff went to Principal Miller's office. Guidance Counselor Deena Currie, the Vice President of CEA and Building Representative, was in the office with Marin Miller. Marin Miller told Plaintiff that he was placing Plaintiff on immediate Administrative Leave based on his October 14 and 18, 2022 mini observations and handed Plaintiff a letter placing her on administrative leave. During this meeting, Plaintiff reiterated to Marin Miller that her childcare issues and disabilities were contributing factors to her arrival times to work.

84.     On October 20, 2022, Plaintiff emailed her lesson plans to Douglas Paul, a substitute teacher. The email contained a study guide and resources for students in class that day. Douglas Paul responded, asking whether or not there would be a test that day. She replied, asking Douglas Paul to call her on her cell phone. In their telephone conversation, Plaintiff told Douglas Paul that he should tell the students to consider the test to be a practice test, explaining that she did not think it was fair to the students to have to take a test if she could not be there to help them prepare.

85.     On October 23, 2022, at 11:11 a.m., Plaintiff emailed Susan Posner and copied Amy Corbett, Chief Program Officer at MFS, to follow up on the voicemail she had left for Susan Posner several weeks ago. Plaintiff requested information on how to appeal the denial of her MFS volunteer application. She requested contact information for Susan Posner's supervisor.

Law Offices of Daniel Snyder
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

Plaintiff wrote that Susan Posner's claim that she shook her fist and swore at Damein Roache and Desiree Gutierrez was false. Plaintiff wrote that Susan Posner's editorial statement that Plaintiff could not be trusted to create a welcoming and safe environment for queer youth was false and had contributed to disciplinary action taken against her. At 12:14 p.m., Susan Posner emailed Plaintiff, writing that Plaintiff's voicemail was unclear and confusing. Susan Posner also wrote that her direct supervisor was Judy Strand, Chief Executive Officer at MFS.

86.    On October 25, 2022, Plaintiff emailed Marin Miller seeking clarification on several points regarding the administrative leave since the substitute was not using the lesson plans she provided each day per his request. She asked if she would be in charge of her students' report cards during her absence or if her substitute would handle that. She also asked about Marin Miller's expectations for her in upcoming parent-teacher conferences.

87.    On October 26, 2022, Marin Miller replied to Plaintiff's October 25, 2022, email, writing that he expected Plaintiff to continue providing daily lesson plans for her substitute, regardless of whether the lesson plans were used. The message implied that Plaintiff was still responsible for report cards and scheduling conferences.

88.    On October 27, 2022, Clinton Fella emailed Plaintiff requesting additional information from her before he began conducting interviews with other staff and students. Clinton Fella specifically asked Plaintiff about several corrections she needed to make to the document Marin Miller shared with Clinton Fella.

89.    On October 27, 2022, Marin Miller emailed Plaintiff, writing that he had finished investigating the concerns that had led to Plaintiff being placed on administrative leave. Marin Miller provided options for meeting times.

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

90.    On October 31, 2022, at 7:45 a.m., Principal Miller, Deena Currie, and Plaintiff met. Plaintiff again told Marin Miller about her childcare issues and disabilities and how they were contributing factors to her arrival times to work. During the October 31, 2022, meeting, Plaintiff asked Marin Miller whether her safety was his priority. Plaintiff said the specific issue of student cell phone use in class was a safety concern for her, especially after her experience with the Instagram account that a student had made to harass her using cellphone pictures taken of her backside. Plaintiff told Marin Miller that she had a strict cell phone policy in her classroom and that her policy is posted on several signs inside her classroom and by her door in the hallway. Marin Miller said that Plaintiff's "authoritarian approach" was not working and was exacerbating the issue, adding that she should do some restorative work with her classes. Plaintiff said she frequently practiced restorative justice and tried to express to her students that cell phones became a mental health trigger and safety concern for her following the Instagram incident. Marin Miller then said that she had not created a "culture of trust" and that her students did not trust her. Plaintiff told Marin Miller that she experienced transphobia at the school frequently and that students did not use the correct pronouns or honorifics or misused her pronouns or honorifics in each of her classes daily. Marin Miller told Plaintiff that following the mini observation on October 18, 2022, "I was going to fire you," but decided against it. He said that Plaintiff needed to have a "growth mindset" and be more receptive to feedback. Mr. Miller told Plaintiff, "I'm giving you a chance to improve here and I think you can improve," but also that she needed to stop looking for external reasons for why she was being disciplined and look inward instead. Plaintiff told Marin Miller that she had never been averse to self-reflection and always tried to improve as an educator. Plaintiff said she had asked for help over and over again but to no avail. Marin Miller put his hand up toward her at this statement and said loudly, "That's

Law Offices of Daniel Snyder
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

enough." Marin Miller concluded the meeting by giving Plaintiff an ultimatum to do restorative work with her classes.

91.    On October 31, 2022, Marin Miller gave Plaintiff the following:

a.    October 27, 2022, Letter of Reprimand regarding punctuality and attendance at scheduled work meetings, falsely alleging that Plaintiff had been late to her Period 1 class on multiple occasions. Plaintiff denied the lateness to Period 1 allegation. Defendant District did not provide any evidence to support the claim. The version of the letter Plaintiff received on this day did not include supplementary investigation notes. Those notes were not provided until her pre-dismissal hearing on January 5, 2023.

b.    An October 27, 2022, Letter of Direction regarding a lesson Marin Miller had observed which had significant inaccuracies regarding use of the approved curriculum, feedback provided for students, and time spent grading papers versus providing instruction. Marin Miller wrote that failure to address these concerns and expectations may result in the next step being the Development of a Plan of Improvement to outline specific support growth in your performance. However, Plaintiff was not offered a Plan of Improvement before being terminated from employment.

c.    An October 28, 2022, Letter of Reprimand regarding supervision from Principal Miller contained significant inaccuracies in both the events in the class that Marin Miller observed and in terms of what Marin Miller claims Plaintiff said in their previous meeting. It also cites several common behaviors among teachers at the school, falsely claiming that Plaintiff sent a disruptive student into the hall, but

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

even if true is a behavior for which other teachers are not disciplined. Marin

Miller provided the text of Board policies regarding student supervision and

discipline. Plaintiff was not provided with Marin Miller's investigation notes.

Those were only provided at her pre-dismissal hearing on January 5, 2023.

92.    On October 31, 2022, Marin Miller submitted "Task: Mini-Observations and

Feedback Collection Tool (Fully Revised Rubric)" to TalentEd for October 14, 2022, mini-

observation.

93.    On October 31, 2022, Marin Miller submitted "Task: Mini-Observations and

Feedback Collection Tool (Fully Revised Rubric)" to TalentEd for the October 18, 2022, mini-

observation. Marin Miller wrote that his concerns will be addressed in a separate investigation.

The minute-to-minute details of Marin Miller's mini-observation recorded in this TalentEd task

do not match the corresponding details that are written in the investigation notes attached to the

Letter of Reprimand given to Plaintiff regarding the supervision of students.

94.    On November 3, 2022, Marin Miller emailed Plaintiff, outlining his expectations

for her for that day. Marin Miller wrote that he wanted her to connect with Carl Reinhold to

discuss how Carl Reinhold and Conrad Schumacher should approach the "pre-circle

conservation (sic)" during her classes that day. Marin Miller additionally directed Plaintiff to

hold restorative circles in collaboration with Carl Reinhold and Conrad Schumacher for each of

her classes the following day, and to meet with Anne Haverkamp to plan her day as well.

95.    On or about the evening of November 3, 2022, Carl Reinhold emailed Plaintiff an

update on how Carl Reinhold's conversations with her classes that day had gone. Carl Reinhold

said he and Conrad Schumacher planned to be present in her classes the following day,

particularly periods 2 and 5.

Law Offices of Daniel Snyder
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

96.    On November 4, 2022, Plaintiff was off work due to illness. Plaintiff emailed Marin Miller, Maria Martinez, and Cal Reinhold regarding lesson plans, learning targets, resources, and student behavioral expectations. Plaintiff later exchanged emails with her substitute for the day, Chris Burg.

97.    On November 6, 2022, Plaintiff received emails from Carl Reinhold and Conrad Schumacher about approaching her return to school after she was out sick.

98.    On November 7, 2022, at 10:49 a.m., Plaintiff emailed Karen Hubbard, Senior Student Info Support & Data Specialist, informing Karen Hubbard that Plaintiff could not access Defendant District's intranet and that when she attempted to log in, the application provided the message "Sorry, that username already exists!"

99.    On November 7, 2022, Marin Miller emailed Plaintiff to remind her of their previous conversations regarding her return to work. Marin Miller also wrote that he would be in her classroom for a mini observation sometime in the next few weeks and that they would need to set up a first round of formal observations soon as well.

100.    On November 8, 2022, Denise Wright, Director of Student Services, sent Plaintiff an email directed to Portland and Gresham area GSA advisors regarding scheduling a new monthly meeting time for GSA and Rainbow Club facilitators' collaboration Zoom calls.

101.    On November 15, 2022, Clinton Fella emailed Plaintiff for further clarification about one of their previous conversations. On November 15, 2022, Clinton Fella reinterviewed Plaintiff from approximately 6:15 p.m. to 10:45 p.m.

102.    On November 16, 2022, Plaintiff emailed Maria Martinez and Marin Miller requesting to leave early because her son was sick. She put in the absence herself and left substitute plans on her desk.

Law Offices of Daniel Snyder
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

103.    On November 16, 2022, at 2:40 p.m., Clinton Fella reinterviewed Plaintiff for approximately twenty-five minutes.

104.    On November 17, 2022, Clinton Fella reinterviewed Plaintiff for two and a half hours, from approximately 5:30 p.m. to approximately 8:00 p.m.

105.    On November 18, 2022, Marin Miller made a positive mini-observation of Plaintiff. On November 18, 2022, Emily Aleman emailed Plaintiff to schedule a time for Marin Miller to observe one of Plaintiff's classes and the required pre- and post-observation meetings. They settled on December 16, 2022, during period 3 for the observation. Emily Aleman scheduled the pre-observation meeting during period 1.

106.    On November 21, 2022, Centennial High School administrators held a "student circle debrief" of the Defendant District's strategic planning session, which was held on November 16, 2022. The students' comments echoed several of the issues Plaintiff had brought up repeatedly in staff meetings, Professional Learning Community meetings, Freshman Teams meetings, and disciplinary meetings. The students shared their feelings of being ignored and unable to voice their concerns. They also expressed concern that the school was not addressing deep problems like mental health, safety, racism, and bias.

107.    On November 23, 2022, Marin Miller emailed the entire staff with a reminder that there was a staff meeting in the library that morning. Marin Miller also included data collected from students the previous year, including their perceptions of their high school experience at Centennial, for staff review and discussion. That data included feedback from students on the need for more education revolving around "race, gender, sexuality, and differences between others" and the need for more gender-neutral bathrooms. Students said "safe schools where everyone belongs" was one of their top three issues.

108.    On December 1, 2022, Plaintiff emailed Marin Miller that she would arrive at school fifteen minutes late due to childcare issues. Marin Miller emailed Plaintiff, writing that she needed to meet with Marin Miller to discuss her arrival time for a staff meeting that had taken place on November 30, 2022. On December 1, 2022, Plaintiff met with Marin Miller about punctuality and attendance. She told Marin Miller her childcare issues and her disabilities were contributing factors to her arrival times to work.

109.    On December 1 and 2, 2022, Marin Miller had mini observations with Plaintiff. On December 1, 2022, Plaintiff's classes were doing a final review in preparation for their summative assessments. On December 2, 2022, the school quarter ended, and students were finishing assessments, completing old work, and checking grades. The students worked independently while the teacher proctored tests, answered questions, graded exams, and finalized grades.

110.    On December 12, 2022, a selection of teachers, administrators, and other staff employed by Defendant District and representatives from Multnomah Education Service District met for day one of a "Tier 1 Retreat." The purpose of the retreat was "to strengthen our understanding of the foundations of Tier 1 Restorative Practices and pedagogical frameworks that support our efforts to create an inclusive community where students are authentically leading the learning."

111.    On December 14, 2022, at 7:28 a.m., Plaintiff emailed Edgar Brambila-Perez and Marin Miller to inform them that she would be fifteen minutes late to a staff meeting due to her son's daycare being closed. On December 14, 2022, at approximately 7:45 a.m., Plaintiff entered the library where staff meetings were normally held and realized they were having a holiday-inspired potluck instead of a staff meeting.

Law Offices of Daniel Snyder
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

112.    On December 15, 2022, on arrival at the campus, she experienced a panic attack due to her disability while parked in the South parking lot. Plaintiff emailed Marin Miller, writing that she would be approximately 15 minutes late to work. On December 15, 2022, at 11:00 a.m. Marin Miller emailed Plaintiff, writing that she needed to see him for a follow-up meeting about punctuality and attendance. Marin Miller included a list of dates with her arrival times at work and any associated messages that Plaintiff had sent to him informing him that she would be late. Marin Miller then wrote that Plaintiff needed to meet with him before the end of the following day, December 16, 2022. On December 15, 2022, at 11:37 a.m., just before the scheduled pre-observation meeting with Marin Miller, Plaintiff realized that she would not be able to meet with Marin Miller at 11:45 a.m. when he requested to meet with her because she was still teaching. On December 15, 2022, at 12:24 p.m., Emily Aleman texted Plaintiff, writing, "Hello. Didn't see you for the pre-obs meeting. Think you could check in before your observation? Or we can reschedule." At 1:02 p.m., Plaintiff texted Emily Aleman, writing, "It (the pre-observation meeting) was scheduled during my third period so I couldn't make it. I didn't realize it when I confirmed it in the email." At 1:12 p.m., Emily Aleman replied via text message, writing, "Can you come by after school? Marin is open from 3-3:30."

113.    On December 15, 2022, at 9:27 p.m., Marin Miller emailed Plaintiff, canceling the December 16, 2022, observation. Marin Miller wrote that the observation was canceled because Plaintiff had not filled out the pre-observation form. Plaintiff later heard from another teacher, Aidan Muth, that Aidan Muth had not completed that form, but Marin Miller had nonetheless still attended their observation and given them positive feedback.

114.    On December 16, 2022, Plaintiff and Rowena Poirier met with Marin Miller after school. Marin Miller said that he had "pulled the attendance" and "matched up" the times that

PAGE 36 – SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff had sent a notification to him that she was going to be late. In this meeting, Marin Miller specifically wanted her to double-check his notes because he had "looked at the cameras" during his investigation but was missing some times. After Marin Miller listed some days that he was missing, Plaintiff looked through the camera roll on her iPhone for selfies of herself arriving at work. Plaintiff corrected Marin Miller's claim that Plaintiff had not arrived at school until 8:02 a.m. one day. Plaintiff explained that she arrived at the school at 7:45 a.m., but she had experienced a panic attack before school, which made her later than she intended. Marin Miller did not inquire more, even though in previous discussions, Marin Miller had heard Plaintiff explain that on some of the occasions in which she had either missed work meetings or arrived late to work meetings was because of her disability. Plaintiff explained that she had notified Marin Miller when she would be late. Rowena Poirier told Marin Miller that she had been in prior meetings with Plaintiff and her former supervisor, Assistant Principal Laura Scully, and that Plaintiff had a flex-time arrangement with Assistant Principal Scully. Rowena Poirier then asked if Plaintiff had this same arrangement with her current supervisor, Marin Miller. Marin Miller interjected and said, "The directive is that you're here every day at 7:30." Rowena Poirier responded, "In all my 20 years in this district, I've never heard of someone asking for flex-time and not getting it." Marin Miller again said that the "directive is 7:30." Plaintiff then asked Marin Miller why he was denying her the accommodation of flex time for her disability. Marin Miller responded, "I'm not denying it right now. I'm collecting data," then condescendingly said, "I'm sorry this is confusing for you." Plaintiff told Marin Miller that she knows the expectation is that staff arrive at 7:30, but sometimes she cannot make that time, such as when she is having panic attacks or childcare issues. Plaintiff said to the best of her ability she had tried to notify him when she would be late. Marin Miller then said, "I'll look into it and get back to you." At no

time during this meeting did Marin Miller give either Plaintiff or Rowena Poirier any indication that he was intending to fire Plaintiff.

115.    On December 16, 2022, Rowena Poirier told Plaintiff that she knew Plaintiff had spoken about her disabilities during all disciplinary meetings that Rowena Poirier had attended. She also recommended that Plaintiff send an email to Shannon Burley to formally request ADA accommodations to "get Marin off your back."

116.    On December 22, 2022, Dr. Katsuda replied to Plaintiff's email from December 15, 2022, in which she had asked for an update about the investigation. Dr. Katsuda wrote that the District's legal counsel had received the investigation report and that it would be reviewed and sent to Dr. Katsuda sometime after winter break.

117.    On December 28, 2022, a general judgment was signed and filed in Court, which legally changed Plaintiff's name and changed her sex to female.

118.    On December 29, 2022, Marin Miller sent Plaintiff an email letter recommending the immediate dismissal of Plaintiff from employment. On December 29, 2022, Plaintiff sent an email to Shannon Burley and Tami Virell to ask about the formal process for requesting workplace accommodations through the Americans with Disabilities Act. Plaintiff also asked about having her name officially changed in the school's systems, since she had filed to legally change her name to Elida Stevie Maeve.

119.    On December 30, 2022, Dr. Katsuda sent Plaintiff a "Pre-Termination Hearing Notice" via email. Dr. Katsuda attached a summary of concerns that Marin Miller had sent to Plaintiff, as well as a second document with a formal notice about the pre-termination hearing. In the document, the District wrote that the hearing would be held on January 5, 2023, from 11:30

a.m. to 12:30 p.m. The District wrote that Plaintiff would be on paid administrative leave from

January 3, 2023, until the hearing and included an agenda for the hearing.

120.    On January 1, 2023, at 8:15 p.m., Plaintiff emailed Defendant District's

information technology center regarding access to TalentEd, the platform typically used for

observation notes and evaluations. Plaintiff wrote that she had not been receiving emails or

notifications from TalentEd and had not been able to access any notes that her evaluator, Marin

Miller, might have been posting. Plaintiff wrote that she believed the issue was due to her new

email alias, which she had requested at the start of the school year as part of her gender

transition, and that the TalentEd account might still be associated with her old email address.

Tanner Fuerstenberg from the information technology help desk replied to Plaintiff's email. He

wrote that any time a name change occurs within the District's system, it can cause issues with

automated processes. Tanner Fuerstenberg wrote that TalentEd is directly overseen by Human

Resources and that Plaintiff should contact Tami Virell.

121.    On January 2, 2023, Plaintiff's therapist wrote a letter to verify her disability

diagnosis. Her therapist listed several workplace accommodations that should be considered,

including flex time, virtual options for attendance at staff meetings, receiving materials for staff

meetings in advance, and the ability to contact someone at school via radio to get classroom

coverage when required for bathroom breaks. Several of the accommodations requested by the

therapist were accommodations Plaintiff had previously requested in meetings with

administrators.

122.    On January 3, 2023, Plaintiff emailed Dr. Katsuda again to follow up about the

results of the investigation and the status of the District's review of the findings. Plaintiff asked

if she would be able to review the findings before the pre-dismissal hearing, and if she would not

be able to review the findings, requested the date of the hearing be pushed back to allow her the opportunity to review the findings.

123.    On January 3, 2023, at 3:17 p.m., Plaintiff sent an email to Laura Scully asking if Ms. Scully had made an official record of their flex time arrangement from the previous school year and whether Ms. Scully had passed that information on to Marin Miller as Ms. Scully had written that she would in a text message conversation. Ms. Scully did not reply to this email.

124.    While Plaintiff was on administrative leave, Instructional coach Anne Haverkamp told Plaintiff that Centennial High School would soon have an equity audit because of some of the issues that Plaintiff  brought to their attention. Plaintiff was still on administrative leave during the three-day equity audit. Plaintiff's pre-dismissal hearing was scheduled for January 5, 2022, one day after the equity audit concluded and Plaintiff was fired the following week on January 11, 2022.

125.    On January 5, 2023, Plaintiff arrived at a meeting with Marin Miller, Dr. Katsuda, and Superintendent James Owens. At the hearing, Plaintiff received several documents, including:

a.    A Pre-Termination Hearing Agenda document that incorrectly named her with her dead name.

b.    Marin Miller's "Summary of Concerns" and letter, which Plaintiff initially received on December 29, 2022, in which Marin Miller wrote of his intention to recommend Plaintiff's immediate dismissal from employment.

c.    A Letter of Expectation that Plaintiff initially received on October 5, 2022, alleging that she acted unprofessionally on September 22, 2022, during a conversation with Damein Roache and Desiree Gutierrez. This new version

Law Offices of Daniel Snyder
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

included notes from Marin Miller's investigation while the initial letter contained

no notes. The notes provided a timeline and summaries of interviews with

witnesses. These included a statement from Tarren Sewell that all the adults

involved in that conversation were behaving unprofessionally; a statement from

Mx. Muth that Mx. Muth had attended Gender and Sexuality Alliance meetings

frequently the previous year before Mx. Muth became an advisor for the club,

without ever having to submit a volunteer form or having Mx. Muth's presence

questioned; an email Plaintiff had sent to Marin Miller giving a fuller account of

her perspective on the situation; a video with time stamps of the conversation. It

also provided a list of concerns she had brought up with Marin Miller afterward

and an email from a former student who shared concerns about patterns of

discriminatory behavior from Damein Roache towards LGBTQ students who

were trying to become peer tutors compared to cisgender, heterosexual students

who tried to become peer tutors.

d.    A copy of the Letter of Reprimand, which Plaintiff initially received on October

28, 2022, regarding punctuality and attendance. When she initially received this

letter, it did not include any investigation notes. This new version included

investigation notes.

e.    A copy of a Letter of Direction, which Plaintiff initially received on October 28,

2022, regarding her instructional performance. Neither version contained

investigation notes, but it was supposedly based on Marin Miller's observations of

her classroom on October 14, 2022, during period 1, and October 18, 2022, during

period 5. Marin Miller's observation notes and feedback for each of these

observations were not submitted until October 31, 2022, at 1:51 p.m. and 1:52

p.m., respectively.

f.    A copy of a Letter of Expectation that Plaintiff received on April 15, 2022, from

her former supervisor Laura Scully, regarding "Arrival Time to Work, Absence

Reporting, and Meeting Participation." Neither copy Plaintiff received included

any investigation notes.

g.    A copy of a Letter of Reprimand, which Plaintiff received on October 28, 2022,

regarding supervision. This version provided Marin Miller's investigation notes.

Plaintiff submitted a rebuttal letter.

126.    On January 9, 2023, Superintendent Owens wrote a letter to Plaintiff informing

her that he had affirmed Principal Miller's recommendation for Plaintiff's immediate dismissal

from employment at Centennial School District for punctuality, failure to adhere to appropriate

processes for absence reporting, lack of attendance at schedule work meetings, unprofessional

conduct, and insufficient instructional practice. No explanation was given for why she would not

be allowed a hearing before dismissal, nor was she given any opportunity to delay the Board's

action until she had a chance to present her case at a hearing.

## SECOND AMENDED COMPLAINT ADDITIONAL FACTUAL ALLEGATIONS

127.    To Plaintiff's best knowledge, Leaf Farley is a cisgender male person. He is a

similarly situated employee of Defendant. He was given a flex-time arrangement by his

supervisor in the 2023-2024 school year, his first year as a teacher.

128.    Stacie Fleck was a similarly situated employee of Defendant. She is a cisgender

woman. She had a flex-time arrangement.

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

129.    Kyla Luksic was a similarly situated employee of Defendant. She is a cisgender woman. She had a flex-time arrangement.

130.    Regarding Plaintiff's "mini evaluations" described in Paragraph 110, to Plaintiff's best knowledge, no other similarly situated employees who were not members of Plaintiff's protected class had ever been subjected to observations on the last days of a quarter, when the students were engaged in review preparation rather than active learning. Additionally, to Plaintiff's best knowledge, no other teachers experienced more than two observations per year.

131.    Jade Robinson was a similarly situated employee of Defendant. Jade Robinson is a cisgender female person. Plaintiff had observed Ms. Robinson arriving for work in a non-punctual manner on several occasions. To Plaintiff's best knowledge, Ms. Robinson was not disciplined for her punctuality.

132.    On September 27, 2022, Plaintiff sent a text message to Laura Scully regarding Plaintiff's arrival to school and flex-time arrangement. Laura Scully responded, "I am sharing this with Marin [Miller] so that he is aware of this communication. Please work out any flex time with him as he is your evaluator." This text was the first time Plaintiff learned that Mr. Miller was her evaluator.

133.    Coach Self taught students in the weight room down the hall from Plaintiff's classroom. Coach Self is a cisgender male person. Plaintiff observed Coach Self routinely leave students unsupervised in the weight room. To Plaintiff's best knowledge, Coach Self was not disciplined for leaving students unsupervised.

134.    Vivian Ngo was a similarly situated employee of Defendant. Ms. Ngo is a cisgender female person. Ms. Ngo taught physics in the classroom neighboring Plaintiff's classroom. Plaintiff frequently observed Ms. Ngo leave her classroom unattended without

arranging for supervision of the students. To Plaintiff's best knowledge, Ms. Ngo was not disciplined for leaving her classroom unattended without arranging for supervision of the students. Plaintiff also observed cisgender individuals named Craig Watts and Joel McKee speaking with students in the hallway. To Plaintiff's best knowledge, Mr. Watts and Mr. McKee were not disciplined for speaking with students in the hallway.

135.    Ms. Ngo used "interactive notebooks" to teach lessons outside the approved curriculum. To Plaintiff's best knowledge, Ms. Ngo was not disciplined for using "interactive notebooks."

136.    On December 15 or 16, 2022, Ms. Ngo had a substitute named Steven Spector. Part of Ms. Ngo's substitute plans were for Mr. Spector to set up a Christmas movie on Disney+ for her students to watch. Ms. Ngo was not disciplined for arranging for Mr. Spector to show a movie. Mr. Miller cited Plaintiff's showing a movie to her students without prior approval as an example of Plaintiff not following board policy.

137.    In late 2022 or early 2023, a fight broke out between students in Ms. Ngo's classroom. Ms. Ngo was injured and requested a radio for safety. Ms. Ngo's request for a radio was promptly granted. Following repeated incidents of hate speech directed at her by students, Plaintiff made a request to Assistant Principal Schloth for a radio for her personal safety. At full staff meetings, Plaintiff also reported concerns about campus security cameras' coverage. Plaintiff's requests were never granted.

/////

/////

/////

/////

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

## FIRST CLAIM FOR RELIEF

### (Title VII Civil Rights Act of 1964)

### (Gender and Sex Discrimination – 42 USC §2000e-2)

138.    Plaintiff alleges all prior relevant paragraphs as if fully set forth herein. Relevant paragraphs include, but are not expressly limited to, paragraphs 20-24, 27, 28, 31, 32, 36, 38, 42, 55 -73, 78, 81, 91, 125, and 126.

139.    At all material times, Defendant was an employer within the meaning of 42 USC § 2000e (b).

140.    Defendant discriminated against Plaintiff with respect to the terms and conditions of her employment, including because of Plaintiff's gender and sex as alleged above. Defendant ultimately discharged Plaintiff from employment.

141.    As a result of Defendant's unlawful employment actions, Plaintiff suffered and continues to suffer economic and non-economic damages in an amount to be proved at trial.

142.    Plaintiff is entitled to an award for past lost wages and benefits, future lost earnings, benefits, and lost earning capacity, and other compensatory damages for future pecuniary losses. Plaintiff's economic damages are continuing in nature and are not presently known.

143.    Plaintiff is entitled to an award for non-economic damages for her emotional distress.

144.    To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of pre-judgment interest at the legal rate from the date the damage occurred until the date of judgment.

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

145.    Plaintiff is entitled to post-judgment interest on all damages, costs and attorneys' fees from the date of judgment until the date paid.

146.    Pursuant to 42 USC § 2000e-5, Plaintiff is entitled to an award of attorneys' fees, expert witness fees, and costs incurred herein.

147.    Plaintiff also seeks an award for such additional relief as justice may require.

## SECOND CLAIM FOR RELIEF

### (Gender Retaliation - 42 USC § 2000e-3)

148.    Plaintiff realleges all prior relevant paragraphs as if fully set forth herein. Relevant paragraphs include, but are not expressly limited to, paragraphs 20-24, 27, 28, 31, 32, 36, 38, 42, 55 -73, 78, 81, 91(b), 125, and 126.

149.    At all material times, Defendant was an employer within the meaning of 42 USC § 2000e (b).

150.    Defendant discriminated and retaliated against Plaintiff with respect to the terms and conditions of her employment because Plaintiff opposed unlawful gender and sex discrimination.

151.    As a result of Defendant's unlawful employment actions, Plaintiff suffered and continues to suffer economic and non-economic damages in an amount to be proved at trial.

152.    Plaintiff is entitled to equitable relief, including, but not limited to, an award of back pay and lost benefits. Plaintiff should be awarded past economic damages in an amount determined fair by a jury to compensate Plaintiff for lost employment opportunities, including, but not limited, promotions and raises. Plaintiff's economic damages are continuing in nature and are not presently known.

153.    Plaintiff is entitled to non-economic damages for her emotional distress.

PAGE 46 – SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

154.     To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of pre-judgment interest at the legal rate from the date the damage occurred until the date of judgment.

155.     Plaintiff is entitled to post-judgment interest on all damages, costs, and attorneys' fees from the date of judgment until the date paid.

156.     Pursuant to 42 USC § 2000e-5, Plaintiff is entitled to an award of attorneys' fees, expert witness fees, and costs incurred herein.

157.     Plaintiff also seeks an award for such additional relief as justice may require.

## THIRD CLAIM FOR RELIEF

### (Gender, sex, and sexual orientation discrimination and retaliation)

158.     Plaintiff re-alleges all prior relevant paragraphs as if fully set forth herein. Relevant paragraphs include, but are not expressly limited to, paragraphs 33 – 36, 39 – 49, 53, 55 – 73, 76, 85, 91, 113, 118, 120, 125, and 126.

159.     Defendant is an "employer" within the meaning of ORS 659A.001(4) and ORS 659A.030.

160.     Plaintiff was subjected to different terms and conditions of employment based on gender, sex, and sexual orientation in violation of ORS 659A.030(1)(b).

161.     In violation of ORS 659A.030 (1), Defendant discriminated against Plaintiff with respect to the terms and conditions of their employment because of Plaintiff's gender, sex, and sexual orientation as alleged above.

162.     Defendant was aware of but refused and failed to take action to remedy the discrimination, harassment, and hostile work environment Plaintiff was forced to endure.

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

163.    Defendant retaliated against Plaintiff because Plaintiff opposed unlawful discrimination as alleged above.

164.    As a result of Defendant's unlawful employment actions, Plaintiff suffered and continues to suffer economic and non-economic damages. Plaintiff is entitled to damages, attorney fees, costs, and interest as alleged below.

## FOURTH CLAIM FOR RELIEF

### (Title I of the Americans with Disabilities Act – Discrimination)

165.    Plaintiff re-alleges all relevant paragraphs. Relevant paragraphs include, but are not expressly limited to, paragraphs 36, 37, 48, 49, 53, 90, 112 – 115, 118, 121, and 123.

166.    At all times material, Defendant was an employer for the purpose of, and subject to, Title I of the Americans With Disabilities Act (ADA).

167.    Plaintiff has an impairment which substantially limits one or more major life activities. Plaintiff has a history or record of such impairment and was regarded by Defendant as having such impairment.

168.    The termination of Plaintiff's employment was not based on fact and instead was motived because Plaintiff is disabled.

169.    At all relevant times, Plaintiff was able to perform the essential functions of her position with reasonable accommodations.

170.    Defendant's conduct violated 42 USC § 12112.

171.    As a result of Defendant's unlawful employment actions, Plaintiff suffered, and continues to suffer, emotional distress.

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

172.    Plaintiff is entitled to non-economic damages sufficient to compensate Plaintiff for emotional distress and other non-pecuniary losses in an amount to be proved at trial. Plaintiff should be awarded non-economic damages in an amount determined fair by a jury.

173.    Plaintiff is entitled to equitable relief, including, but not limited to, a finding that the Defendant violated the ADA.

174.    Plaintiff is entitled to recover economic damages for past and future wages, past and future benefits, and other expenses. To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

175.    Pursuant to 42 USC §§ 12117 and 2000e-5, Plaintiff is entitled to an award of attorneys' fees, expert witness fees, and costs incurred herein.

176.    Plaintiff is entitled to post judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

## FIFTH CLAIM FOR RELIEF

### (Title I of the Americans with Disabilities Act – Retaliation)

177.    Plaintiff re-alleges all relevant paragraphs. Relevant paragraphs include, but are not expressly limited to, paragraphs 90, 91, 114, 123, and 125.

178.    Defendant retaliated against Plaintiff as stated above for pursuing Plaintiff's rights in accordance with the ADA and reporting discrimination, retaliation, and intimidation against Plaintiff. Such actions by Defendant are in violation of the ADA.

179.    As a result of Defendant's unlawful employment actions, Plaintiff suffered, and continues to suffer, economic and non-economic damages.

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

180.    Plaintiff is entitled to equitable relief, including a finding that Defendant violated the ADA, an order enjoining Defendant from engaging in the unlawful employment practice, and such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement with back pay or any other equitable relief (such front pay to cover any gap period) as the court deems appropriate.[1]

181.    To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

182.    Pursuant to 42 USC §§ 12117 and 2000e-5, Plaintiff is entitled to an award of attorneys' fees, expert witness fees, and costs incurred herein.

183.    Plaintiff is entitled to post judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

## SIXTH CLAIM FOR RELIEF

### (ORS 659A.103 et seq. - Oregon Rehabilitation Act)

184.    Plaintiff re-alleges all relevant paragraphs. Relevant paragraphs include, but are not expressly limited to, paragraphs 36, 37, 48, 49, 53, 90, 112 – 115, 118, 121, and 123.

185.    Plaintiff is a "disabled person" as defined at ORS 659A.104(1).

186.    Defendant is an "employer" as defined at ORS 659A.106.

187.    Plaintiff could perform the essential functions of Plaintiff's job with Defendant with reasonable accommodations.

---

[1] Additionally, Plaintiff requests compensatory damages as part of her wrongful discharge claim.

PAGE 50 – SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

188.    Defendant terminated Plaintiff because of her disability and in retaliation for invoking protected activity.

189.    As a result of Defendant's unlawful employment actions, Plaintiff suffered, and continues to suffer, emotional distress. Plaintiff suffered, and continues to suffer, economic damages, including, but not limited to, past and future wages, past and future benefits, and other expenses.

190.    Plaintiff is entitled to equitable relief, including, but not limited to, a finding that Defendant violated the Oregon Rehabilitation Act, an order enjoining Defendant from engaging in the unlawful employment practice, and such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement with back pay or any other equitable relief as the court deems appropriate.

191.    Plaintiff is entitled to economic damages for past and future wages, past and future benefits, and other expenses. To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

192.    Pursuant to ORS Chapter 659A and ORS 20.107, Plaintiff is entitled to recover Plaintiff's reasonable attorneys' fees and costs, including expert witness fees.

193.    Plaintiff is entitled to post judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

## <u>SEVENTH CLAIM FOR RELIEF</u>

### **(Family and Medical Leave Act of 1993 - 29 USC § 2601 et seq.)**

194.    Plaintiff realleges all relevant paragraphs. Relevant paragraphs include, but are not expressly limited to, paragraphs 25, 29, 34-41, 43, 45-49, 52-53, 62, 91, 93, 99, 125, and 126.

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

195.    Defendant is an "employer" within the meaning of 29 USC § 2611(4).

196.    Defendant employed at least 50 employees for each working day during each of 20 or more calendar work weeks from 2020 through 2022.

197.    At all times material, Plaintiff was an 'eligible employee' within the meaning of 29 USC § 2611(2).

198.    At all times material, Defendant employed 50 or more employees with 75 miles of the worksite where Plaintiff performed work for Defendant.

199.    Plaintiff was employed by Defendant for at least 1,250 hours of service during the 12-month period immediately preceding the commencement of the leave.

200.    At all times material, Plaintiff was an 'eligible employee' within the meaning of 29 USC § 2611(2).

201.    Plaintiff took medical leave protected by the Family Medical Leave Act (FMLA).

202.    At all material times, Plaintiff suffered from a serious health condition, as defined by 29 USC § 2611(11).

203.    Defendant interfered with Plaintiff for engaging in the protected activity of taking leave under FMLA. Defendant interfered with Plaintiff for taking medical leave by taking adverse employment actions against Plaintiff, including, but not limited to, terminating Plaintiff's employment.

204.    As a direct and proximate result of Defendant's interference, discrimination and retaliation, Plaintiff has suffered lost income and will continue to suffer past and future wages, past and future benefits, and other expenses, all to Plaintiff's economic damages in an amount to be determined at trial.

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

205.    The Court should enter an order declaring that Defendant violated the FMLA.

206.    To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

207.    Plaintiff is entitled to an award of liquidated damages pursuant to 29 USC § 2617(a)(1)(A).

208.    Pursuant to 29 USC § 2617(a)(3), Plaintiff is entitled to an award of attorney's fees, expert fees, and costs incurred herein.

209.    Plaintiff is entitled to post judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

## EIGHTH CLAIM FOR RELIEF

### (Oregon Family Leave Act - ORS 659A.150 et. seq.)

210.    Plaintiff realleges all relevant paragraphs. Relevant paragraphs include, but are not expressly limited to, paragraphs 25, 29, 34-41, 43, 45-49, 52-53, 62, 91, 93, 99, 125, and 126.

211.    Plaintiff took medical leave protected by the Oregon Family Leave Act (OFLA).

212.    Defendant employed 25 or more persons in the State of Oregon for each working day during each of 20 or more calendar workweeks while Plaintiff was employed by them.

213.    Immediately prior to commencing family leave Plaintiff worked for Defendant for more than 180 days.

214.    Plaintiff worked an average of more than 25 hours per week for Defendant during the 180 days immediately preceding the date on which Plaintiff commenced family leave.

215.    At all material times, Plaintiff had a serious health condition as that term is defined in ORS 659A.150(6).

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

216.    Defendant interfered, discriminated, and retaliated against Plaintiff for taking medical leave by taking adverse employment actions against Plaintiff, including, but not limited to, terminating Plaintiff's employment.

217.    As a result of Defendant's interference, discrimination and retaliation against Plaintiff, Plaintiff suffered and continued to suffer economic losses, emotional distress, and other nonpecuniary losses.

218.    As a result of Defendant's discrimination and retaliation against Plaintiff, Plaintiff is entitled to equitable relief.

219.    Pursuant to 659A.885, Plaintiff is entitled to recover back pay.

220.    The Court should enter an order declaring that Defendant violated the OFLA.

221.    To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

222.    Pursuant to ORS 659A.885(1) and ORS 20.107, Plaintiff is entitled to recover Plaintiff's reasonable attorney fees and costs, including expert witness fees.

223.    Plaintiff is entitled to post judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

## NINTH CLAIM FOR RELIEF

### (Oregon Sick Leave Act)

224.    Plaintiff realleges all relevant paragraphs. Relevant paragraphs include, but are not expressly limited to, paragraphs 25, 29, 34-41, 43, 45-49, 52-53, 62, 91, 93, 99, 125, and 126.

225.    Plaintiff sought to take sick leave protected by ORS 653.641.

226.    Defendant employed 10 or more persons in the State of Oregon.

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

227.    Prior to taking leave, Plaintiff was employed by Defendant for more than 90 days.

228.    Plaintiff sought sick leave to care for herself.

229.    Defendant interfered, discriminated, and retaliated against Plaintiff for taking leave by taking adverse employment actions against Plaintiff, including, but not limited to, terminating their employment.

230.    As a result of Defendant's interference, discrimination, and retaliation against Plaintiff, Plaintiff suffered and continues to suffer economic losses.

231.    As a result of Defendant's discrimination and retaliation against Plaintiff, Plaintiff is entitled to equitable relief.

232.    Pursuant to ORS 659A.885, Plaintiff is entitled to recover back pay.

233.    The court should enter an order declaring that Defendant violated ORS 653.641.

234.    To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

235.    Pursuant to ORS 659A.885(1) and ORS 20.107, Plaintiff is entitled to recover Plaintiff's reasonable attorneys' fees and costs, including expert witness fees.

236.    Plaintiff is entitled to post judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date judgment is paid.

## <u>TENTH CLAIM FOR RELIEF</u>

### (ORS 659A.199 – Whistleblower Discrimination)

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

237.     Plaintiff re-alleges all prior relevant paragraphs above as though fully restated herein. Relevant paragraphs include, but are not expressly limited to, paragraphs 20, 21, 24, 27, 28, 31, 32, 33, 37, 42, 62 – 73, and 85.

238.     Plaintiff reported to Defendant information that Plaintiff believed was in violation of state and federal laws.

239.     Defendant discriminated and retaliated against Plaintiff because of the reports made by Plaintiff. Defendant's actions violated ORS 659A.199, are an unlawful employment practice, and caused Plaintiff economic and noneconomic damages.

As a result of Defendant's conduct, Plaintiff suffered and continues to suffer non-economic and economic damages. Plaintiff is entitled to the relief, damages, attorney fees, costs, and interest as alleged below.

## ELEVENTH CLAIM FOR RELIEF

### (Wrongful Termination)

240.     Plaintiff realleges all relevant paragraphs.

241.     Defendant's conduct, as alleged, was in retaliation for Plaintiff assertion of Plaintiff's state and federally protected rights to work in an environment free from discrimination, harassment, and otherwise hostile work environments, and as such constitutes a wrongful discharge under state common law.

242.     Plaintiff's remedies under state and federal statutory law do not constitute a complete remedy for the damage Defendant has inflicted.

243.     As a result, Plaintiff suffered damage and is entitled to the damages and other relief set forth below.

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

244.    Plaintiff is entitled to equitable relief, including but not limited to, a declaration that Defendant violated Plaintiff's statutory rights, reinstatement, and an injunction prohibiting further discrimination and retaliation.

245.    Plaintiff is entitled to an award for past lost wages and benefits and future lost earnings, benefits, and lost earning capacity, and other compensatory damages for past and future pecuniary losses. Plaintiff should be awarded economic damages in an amount determined fair by a jury.

246.    Plaintiff is entitled to noneconomic damages sufficient to compensate Plaintiff for emotional distress and other nonpecuniary losses in an amount to be proved at trial. Plaintiff should be awarded noneconomic damages in an amount determined fair by a jury.

247.    To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

248.    Pursuant to ORS 20.107, Plaintiff is entitled to an award of attorney fees and expert witness fees.

249.    Plaintiff is entitled to post judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

## **PRAYER FOR RELIEF**

Plaintiff prays for the following judgment against Defendant:

A.  A sum which will fully compensate Plaintiff for her non-economic damages in a sum that is just as determined by a jury;

B.  A sum which will fully compensate Plaintiff for her economic damages in a sum that is just as determined by a jury;

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

   C.  Equitable Relief;

   D.  Plaintiff's costs and disbursements incurred herein;

   E.  Plaintiff's attorney fees; and

   F.  For such other and further relief as the Court may deem just and equitable.

**Plaintiff demands a trial by Jury.**

Dated: March 31, 2025.

          **Law Offices of Daniel Snyder**

          */s/ Daniel Snyder*
          Daniel Snyder, OSB No. 783856
          dansnyder@lawofficeofdanielsnyder.com
          Paul Bastian, OSB No. 062706
          paul@lawofficeofdanielsnyder.com
          LAW OFFICES OF DANIEL SNYDER
          1000 S.W. Broadway, Suite 2400
          Portland, Oregon 97205
               Attorneys for the Plaintiff

PAGE 58 – SECOND AMENDED
COMPLAINT AND DEMAND FOR
JURY TRIAL