**Daniel Snyder, OSB No. 783856**
dansnyder@lawofficeofdanielsnyder.com
**Paul Bastian, OSB No. 062706**
paul@lawofficeofdanielsnyder.com
**LAW OFFICES OF DANIEL SNYDER**
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
Telephone: (503) 241-3617
Facsimile: (503) 241-2249
   Attorneys for the Plaintiff

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| **ELIDA MAEVE** <br>            Plaintiff, <br><br> v. <br><br> **CENTENNIAL SCHOOL DISTRICT NO. 28 J** <br>            Defendant. | Case No. 3:24-cv-01427-SB <br><br> **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** |

Plaintiff responds to Defendant's motion to dismiss as set forth below. This response is supported by the Declaration of Elida Maeve.

## LEGAL STANDARD

A Rule 12(b)(6) motion tests whether there is a cognizable legal theory or sufficient facts alleged to support a cognizable legal theory. *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015) (citing *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). On a motion to dismiss for failure

PAGE 1 – **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Law Offices of Daniel Snyder
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

to state a claim, this Court must consider all well-pleaded allegations in a complaint as true, as well as all reasonable inferences to be drawn from them. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Fed. R. Civ. P. 8(a)(2) requires that a complaint contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Accordingly, a plaintiff is only required to state a plausible claim for relief that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). And while this Court need not credit a plaintiff's "legal conclusions," the presumption of truth indisputably extends to all "factual allegations" in a complaint, however "conclusory." *Iqbal*, 566 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

## RESPONSE

**Motion 1: Plaintiff's First, Second, and Third Claims for Relief state claims upon which relief can be granted.**

Plaintiff's Second Amended Complaint establishes a prima facie case "based on [allegations of] circumstantial evidence" by pleading facts showing that: (1) "they are members of a protected class," (2) "they were qualified for their positions and performing their jobs satisfactorily," (3) "they experienced adverse employment actions," and (4) "similarly situated individuals outside [their] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination[.]'" *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1158 (9th Cir. 2010). Plaintiff's Second Amended Complaint also alleges sufficient evidence that "a discriminatory reason more likely than not motivated the employer" *Opara v. Yellen* 57 F.4th 709 (9th Cir. 2023) (internal citation omitted).

PAGE 2 – **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

Plaintiff's Second Amended Complaint details how similarly situated individuals outside Plaintiff's protected class were treated more favorably, ECF 27, ¶¶ 127 - 137. Defendant's motion cites the holding in *Vasquez v. Los Angeles,* 349 F.3d 634 (9th Cir. 2003), in support of the position that other employees with similar job duties can serve as a similarly situated comparator, but are similarly situated in the context of discipline only if they "engage[d] in problematic conduct of comparable seriousness to that of" the plaintiff. *Vasquez,* 349 F.3d at 641. Defendant's motion asserts, "The individuals plaintiff identified in the newly added allegations are not alleged to have engaged in conduct as severe as the conduct plaintiff alleges was the cause of her termination." ECF 30 at 6.

In *Vasquez*, a Deputy Parole Officer I (DPO I), Mr. Vasquez, was supervising juveniles in a youth detention center in the County of Los Angeles. Mr. Vasquez claimed he called his supervisor, Ms. Berglund, to request permission for the youth he was supervising (the "turquoise cottage") to play football against the youth supervised by another Parole Officer, Mario Ng (the "garnet cottage.") Mr. Vasquez contended that his supervisor granted his request, providing the game was touch football. *Id*. at 638. Ms. Berglund claimed that there was a policy at the detention center that no football of any kind was to be played, and she therefore refused his request to play football but said he could play soccer. *Id*. Mr. Vasquez and Mr. Ng both later admitted to Ms. Berglund that the youth had been playing football, but Mr. Ng stated that he was not aware that Ms. Berglund had spoken to Mr. Vasquez before the game. *Id*. at 639. Mr. Vasquez alleged he was subjected to adverse employment actions, and Mr. Ng was treated more favorably. The district court granted summary judgment for the defendant, and the Ninth Circuit affirmed, finding that:

PAGE 3 – **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

"Although Vasquez and Ng held the same level position, they were also not similarly situated. Ng did not engage in problematic conduct of comparable seriousness to that of Vasquez.[17] Ng did not know that Vasquez had called Berglund before the football game and believed that Vasquez was in charge of recreation for the day. Therefore, Ng did not know that he was disobeying a direct order from Berglund by participating in the game."
*Id*. at 641-642.

In the case at bar, however, the alleged difference in conduct between Plaintiff and her comparators is not so distinguishable. Plaintiff does not claim to have disobeyed any direct order from a supervisor.

Defendant's motion cites ¶ 125 of Plaintiff's Second Amended Complaint as identifying a list of "performance issues" outlined by Principal Miller on January 5, 2023. The same paragraph of the Second Amended Complaint also alleges Plaintiff submitted a rebuttal. Plaintiff wrote a letter addressed to Melissa Grindle dated March 3, 2023, "Until evidence is provided to the contrary, I maintain that I never acted in an unprofessional manner toward any student or staff member." Maeve Decl. Ex. 2. This raises a question requiring weight of the evidence, as the dissenting opinion in *Vasquez* respectfully observed:

> The District court determined, and the majority agreed, that he was not similarly situated because Vasquez had proffered no evidence that Ng was told not to organize the game or that he disobeyed the direct order of a supervisor.
>
> This analysis is flawed for one glaring reason: Vasquez contends that Berglund did not forbid him from organizing the flag football game. If the District Court had properly refrained from weighing the evidence and had viewed it in the light most favorable to Vasquez, then he *was* similarly situated to Ng because he was punished for organizing a game from which he was not told to refrain and he did not otherwise know it to be against the rules. Accordingly, he was treated less favorably than a similarly situated DPO I even though he did not allegedly disobey a supervisor or flout any rule of the DKC [detention center].

*Vasquez*, 349 F.3d at 650.

In the first Opinion and Order dismissing Plaintiff's first claim for relief, the Court considered Plaintiff's comparator theory as follows:

PAGE 4 – **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

The Court located one decision referring but declining to reach a similar comparator argument. In *Kilpatrick v. HCA Human Resources, LLC*, No. 22-5307, 2023 WL 1961223, at *3 (6th Cir. Feb. 13, 2023), the plaintiff argued that he "represent[ed] his own comparator because he was treated well before he came out as gay." *Id.* The Sixth Circuit did not need to "reach the comparator issue because even if [the plaintiff] ha[d] pled a prima facie case, [the defendant] ha[d] offered a valid non-discriminatory reason for his termination: altered educational documents." *Id.* Thus, the plaintiff needed to "identify evidence from which a reasonable jury could conclude that the proffered reason [was] actually a pretext for unlawful discrimination." *Id.* (simplified). The plaintiff, however, failed to "raise a genuine issue of material fact on pretext." *Id.*

The Court then summarized several grounds on which Miller and Owens claimed to have based the recommendation to terminate Plaintiff's employment. See ECF 21 at 41.

In *Opara v. Yellen*, 57 F.4th 709 (9th Cir. 2023), the Ninth Circuit articulated the standard for evaluating pretext:

> [a] plaintiff can prove pretext in multiple ways, either: (1) "directly, by showing that unlawful discrimination more likely [than not] motivated the employer;" (2) "indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable;" or via "a combination of the[se] two kinds of evidence." *Chuang*, 225 F.3d at 1127 (quoting *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220–22 (9th Cir. 1998)).
>
> Under any approach, generally, "very little[] evidence is necessary to raise a genuine issue of fact regarding an employer's motive." *McGinest*, 360 F.3d at 1124 (alteration in original) (internal quotation marks omitted) (quoting *Schnidrig*, 80 F.3d at 1409). For instance, the Supreme Court has instructed that "a plaintiff's prima facie case, combined with . . . evidence . . . that the employer's asserted justification is false, may" be enough. *Reeves*, 530 U.S. at 148.
> *Opara*, at 38.

Plaintiff's Second Amended Complaint now alleges facts sufficient to raise a question as to whether the employer's proffered explanation for the adverse action is "unworthy of credence" or false.

In *Opara*, the Plaintiff was an Internal Revenue Service employee. Her Territory Manager identified six instances in which she improperly accessed taxpayer data without an

PAGE 5 – **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

official reason to do so. *Opara* at 17. Whether that was due to a mistake, or a language barrier, it was a violation of "which falls into the penalty range of removal for a first offense. Thus, Opara was on notice that her termination was a possibility." *Opara* at 39.

In the present case, Plaintiff does not allege she was engaged in any such "removable offense." Plaintiff also submitted a letter dated March 6, 2023, addressing the issues of instructional performance, attendance, and board policy. Plaintiff's letter explained that it is:

> [c]ommon practice throughout the building for teachers to leave the classroom briefly to make copies, use the restroom, speak in the hall with individual or small groups of students, or confer briefly with another teacher. These are widespread practices, and in many teacher education programs, the option of sending a student out into the hall for a moment and then stepping out to speak with them individually is taught as a method of classroom management.
> Maeve Decl. Ex. 3.

Any acting Principal would be aware of such widespread practices among employees. Plaintiff further alleges that Mr. Miller discriminated against Plaintiff with respect to the specific dates and number of mini-observations compared to similarly situated employees. See Second Amended Complaint, ¶ 130. Evidence of direct discrimination is also alleged, and further explained in the supporting attached Declaration of Elida Maeve, that under the Collective Bargaining Agreement Section 13.5, "The District will follow state and federal laws relative to any individual who physically or verbally abuses or intimidates or interferes with any employee performing their duties." Maeve Decl. Ex. 1. Mr. Miller observed such behavior and did not intervene. See Maeve Decl. ¶ 2.

**Motion 2: Plaintiff's Fifth and Sixth Claims Seek Equitable Remedies.**

Plaintiff's position on the available remedies is fully briefed in Plaintiff's Motion For Reconsideration, ECF 24, filed March 12, 2025. To avoid duplicative briefing, Plaintiff's position is summarized as follows:

PAGE 6 – **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

Plaintiff does not agree that state law damages are controlled by federal law and, instead, the plain language of ORS 659A.885(3) allows recovery of compensatory damages for ORA disability discrimination and retaliation claims. Backpay is equitable relief, and is an available remedy for Title I ADA Retaliation claims. The purpose of ADA back pay compensation is to make the plaintiff whole by restoring her to the same position she would have been in had the discrimination or retaliation not occurred. See *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418–21, 95 S.Ct. 2362, 45 L.Ed.2d. 280 (1975). Remedies can include lost wages, fringe benefits such as medical benefits and pension contributions, hiring orders, restoration of leave, providing full opportunity to participate in benefit that was denied—i.e., training or preferential work assignments—and lost seniority. See *Pettway v. American Cast Iron Pipe Co.*, 494 F2d 211, 263 (5th Cir 1974).

The courts have "broad equitable discretion" to effectuate the "make whole" objective of the statute. *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 763 (1976); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975). A presumption exists in favor of back pay awards. *Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1020 (9th Cir.2000) (citing *Albemarle*, 422 U.S. at 421). Front pay may be awarded to make the plaintiff whole from the time of judgment to the time of reinstatement, or for a reasonable period when reinstatement is not an appropriate remedy. See *Pollard v. E.I. du Pont de Nemours & Co.*, 532 US 843, 852–54, 121 S Ct 1946, 150 L Ed 2d 62 (2001); *Cassino v. Reichhold Chemicals*, 817 F2d 1338, 1347 (9th Cir 1987), cert den, 484 US 1047 (1988). See also *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 951–54 (7th Cir 1998) (approving lost earning capacity under Title VII claim).

In this case, Plaintiff's first amended complaint clearly requests equitable relief in the form of back pay. See FAC ¶¶ 171 and 179 ("Plaintiff is entitled to recover economic damages

PAGE 7 – **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

for past and future wages…")( emphasis added.) Because Plaintiff's First Amended Complaint seeks equitable relief, it was error to dismiss Plaintiff's disability retaliation claims.

**Motion 3: Plaintiff's Tenth Claim for Relief Alleges Facts Supporting a Plausible Causal Link Between Her Report and Her Termination.**

Plaintiff's Tenth Claim should not be dismissed based on Defendant's offering a non-discriminatory reason for the adverse employment action. As this Court wrote in the first Opinion and Order, "Maeve's allegations suggest that Miller immediately acted on Maeve's reports of bias incidents predating his time as principal and played a role in initiating an outside consultant's investigation, which resulted in a multi-day equity audit addressing issues that Maeve raised" ECF 21 at 41.

The act of initiating an investigation does not insulate Defendant from liability, however, if the investigation itself was biased. In Plaintiff's March 3, 2023, rebuttal letter, she wrote: "I made written evidence available to Clint Fella throughout the investigation of more recent incidents of gender bias … much of my own evidence and testimony provided to Clint Fella was not used." Maeve Decl. Ex. 2, page 3.

**Motion 4: Plaintiff's Eleventh Claim for Relief Should Not be Dismissed.**

As discussed in Section 2, supra, and Plaintiff's Motion for Reconsideration, Plaintiff's remedies under state and federal statutory law do not constitute a complete remedy for the damage Defendant has inflicted. The Oregon Supreme Court held in *Babick v. Oregon Arena Corp.* that "a discharge of an at-will employee nonetheless may be deemed "wrongful" (and, therefore, actionable) under certain circumstances. Examples of such circumstances include: (1) when the discharge is for exercising a job-related right that reflects an important public policy, see, e.g., *Brown v. Transcon Lines*, 284 Or 597, 588 P2d 1087 (1978) (employee unlawfully

PAGE 8 – **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

discharged for filing workers' compensation claim); or (2) when the discharge is for fulfilling some important public duty, see, e.g., *Delaney v. Taco Time Int'l*, 297 Or 10, 681 P2d 114 (1984)." *Babick*, 333 Or. 401, 40 P.3d 1059 (2002). Defendant also cites *Estes v. Lewis and Clark College*, 152 Or. App. 372, 381, 954 P.2d 792 (1998) (An employee must establish a causal link between their discharge and protected activity, meaning that the protected activity must be "a factor that made a difference" in the discharge decision. ECF 30 at 9.) Plaintiff's case is distinguishable from *Estes*. The plaintiff in Estes (a reference librarian director at Lewis and Clark College) alleged that her position was eliminated because of a deteriorating work relationship with the associate dean of library and computer services (Mr. Nycum.) As the Court wrote, "A threshold problem for plaintiff is that the record establishes, without dispute, that Nycum did not unilaterally downsize the program and eliminate plaintiff's and another staff person's positions." *Estes*, 954 P.2d at 797. Plaintiff's case in this matter does not have such a causation problem. As discussed above, Plaintiff's exercising her right to be free from discrimination, harassment, and otherwise hostile work environments was a substantial factor in the termination of her employment.

## CONCLUSION

Defendant's motions should be denied. If the Court grants any part of Defendant's motions, Plaintiff requests leave to amend to cure any defect.

Dated: May 8, 2025

                                    **Law Offices of Daniel Snyder**

                                    */s/ Daniel Snyder*
Daniel Snyder, OSB No. 783856
dansnyder@lawofficeofdanielsnyder.com
Paul Bastian, OSB No. 062706
paul@lawofficeofdanielsnyder.com

PAGE 9 – **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

          LAW OFFICES OF DANIEL SNYDER
          1000 S.W. Broadway, Suite 2400
          Portland, Oregon 97205
              Attorneys for the Plaintiff

PAGE 10 – **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249