**Kurt C. Peterson, OSB #980065**
**kpeterson@williamskastner.com**
WILLIAMS, KASTNER & GIBBS PLLC
805 SW Broadway, Suite 2440
Portland, OR 97205-3317
Phone: 503-228-7967
Fax: 503-222-7261
Attorneys for Defendant

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| **ELIDA MAEVE,**<br><br>Plaintiff,<br><br>v.<br><br>**CENTENNIAL SCHOOL DISTRICT NO. 28J,**<br><br>Defendant. | Case No. 3:24-cv-01427-SB<br><br>**DEFENDANT CENTENNIAL SCHOOL DISTRICT NO. 28J'S MOTION FOR SUMMARY JUDGMENT**<br><br>**ORAL ARGUMENT REQUESTED** |

## LR 7-1 CERTIFICATION OF COMPLIANCE

Pursuant to LR 7-1(a), counsel for Defendant Centennial School District No. 28J ("Centennial") has conferred with counsel for Plaintiff and Plaintiff objects to this Motion. Pursuant to LR 7-1(d)(2), Defendants request oral argument.

## MOTION

Pursuant to Federal Rule of Civil Procedure 56, Defendant moves this Court to enter judgment in its favor and dismiss with prejudice Plaintiff's claims. This Motion is supported by

the following memorandum of law, the record before the Court, and the accompanying Declaration of Kurt Peterson.

## MEMORANDUM OF LAW

## I. INTRODUCTION

This matter stems from allegations of wrongful termination, discrimination, retaliation, and violation of the Family Medical Leave Act ("FMLA"), Oregon's Family Leave Act ("OFLA"), and Oregon's Sick Leave Act ("OSLA"). Specifically, Plaintiff alleges that she suffered damages at the hands of Centennial all because of her gender, sex, Attention-Deficit-Hyperactivity Disorder ("ADHD") disability, and her decision to say something about it, i.e. her employment with Centennial was terminated. However, the truth of the matter is that Plaintiff was terminated for multiple reasons, none of which were related to her gender, sex, ADHD, or supposed whistleblower activities. In fact, as is explained in more detail below, Centennial had many reasons to terminate Plaintiff, including consistent poor performance, tardiness, and attitude, despite having received multiple warnings and feedback from Centennial that Plaintiff was falling below the standard expected of someone in her position and that she needed to improve.

All eleven claims brought by Plaintiff showcase that there is no genuine issues of material fact, even when taking the evidence in light most favorable to Plaintiff. As such, Centennial respectfully requests that this Court grant this Motion in its entirety, as Centennial is entitled to judgment as a matter of law.



**Williams, Kastner & Gibbs PLLC**
805 SW Broadway, Suite 2440
Portland, OR 97205-3317
Telephone: 503-228-7967 • Fax 503-222-7261

## II. FACTUAL BACKGROUND

The factual background in this matter has already been extensively briefed by this Court and is thus incorporated in this Motion as if fully set forth herein. In addition to those facts, Centennial puts forth the following.

Issues with Plaintiff's job performance began in early 2022, when Plaintiff began showing up late to work and missing staff meetings, all without proper approval to do so.[1] Plaintiff's lackluster job performance was not going unnoticed, as Plaintiff's then supervisor Laura Scully began contacting Plaintiff reminding her of the school policies and the need to fulfill the obligations of her role with Centennial.[2] When Plaintiff failed to improve her performance despite Scully's best efforts to the contrary, Plaintiff was informed on April 14, 2022, via email and then again in a formal letter on April 15, 2022, that further incidents related to attendance and punctuality may lead to further discipline, up to and including dismissal.[3] Plaintiff was then on leave for various periods of time through the summer of 2022.[4]

Shortly after Plaintiff's return to Centennial, she was accused of bullying, harassing, and acting unprofessional towards members of the Sun Community Schools ("SUN") Gender Sexuality Alliance Club.[5] After a thorough investigation was conducted regarding these allegations against Plaintiff, then Principal of Centennial Marin Miller found that Plaintiff's conduct could be considered a violation of various school district policies and the Professional

---

[1] *See* Declaration of Kurt Peterson ("Decl. of K. Peterson"), ¶ 3.
[2] *Id.* at ¶ 4 – 5.
[3] *Id.* at ¶ 6.
[4] *See* ECF No. 27, Plaintiff's Second Amended Complaint.
[5] *See* Decl. of K. Peterson, ¶ 7.



**Williams, Kastner & Gibbs PLLC**
805 SW Broadway, Suite 2440
Portland, OR 97205-3317
Telephone: 503-228-7967 • Fax 503-222-7261

Code of Conduct.[6] Mr. Miller's findings were memorialized in a Letter of Expectations shared with Plaintiff on October 5, 2022.[7]

Plaintiff's punctuality and attendance went unchanged and still remained an active issue once she returned from leave, to the point that Mr. Miller had to contact Plaintiff on October 13, 2022, regarding these issues, just like the former Principal Laura Scully had to contact Plaintiff regarding these issues.[8] To make matters worse, Plaintiff was also failing to fulfill her roles and responsibilities as a science teacher in the classroom.[9] In a Letter of Direction shared with Plaintiff on October 27, 2022, Mr. Miller informed Plaintiff that he had concerns with Plaintiff's performance and outlined the following things as areas of concern, though he explicitly stated that this list of issues was not comprehensive:

**1.** Not following or using the Centennial School District curriculum;

**2.** Inadequate classroom learning environment;

**3.** Inadequate pedagogical practices;

**4.** Inadequate classroom management; and

**5.** Inadequate instructional planning.[10]

In this Letter of Direction, Mr. Miller also informed Plaintiff that "failure to address these concerns and expectation may result in the next step being the Development of a Plan of Improvement."[11]

---

[6] *Id.*
[7] *Id.*
[8] *Id.* at ¶ 8.
[9] *Id.* at ¶ 9.
[10] *Id.*
[11] *Id.*



**Williams, Kastner & Gibbs PLLC**
805 SW Broadway, Suite 2440
Portland, OR 97205-3317
Telephone: 503-228-7967 • Fax 503-222-7261

Plaintiff also received a written letter of reprimand on October 27, 2022, in relation to her staggering attendance and punctuality issues,[12] as well as a written letter of reprimand on October 28, 2022, in relation to her "poor judgment and unprofessional treatment of [her] students, failing to follow procedures, and failure to fulfill [her] professional responsibility to provide adequate supervision of [her] assigned students."[13]

Despite the various warnings, reprimands, etc., that were given to Plaintiff regarding her attendance and punctuality, and their potential to lead to termination if not improved, she *still* decided to come and go as she pleased with both regular class attendance and staff meeting attendance.[14] From October 27, 2022, when she received the written letter of reprimand to December 15, 2022, Plaintiff was late to school fifteen (15) times.[15] Ultimately on December 29, 2022, Mr. Miller informed Plaintiff that he was recommending Plaintiff be terminated due to her conduct and performance.[16]

That very same day, Plaintiff contacted Centennial's HR department stating that "[she] need[s] to request ADA workplace accommodations for [herself] and [is] wondering what the formal process for requesting these are and what forms if any are required?"[17] Centennial responded by informing Plaintiff of all the information that she needed to compile and share with Centennial, which would then be followed be an interactive meeting to discuss the request, accommodations needed, etc.[18] On January 2, 2023, Plaintiff emailed Centennial's HR

---

[12] *Id.* at ¶ 10.
[13] *Id.* at ¶ 11.
[14] *Id.* at ¶ 12.
[15] *Id.*
[16] *Id.* at ¶ 1.
[17] *Id.* at ¶ 13.
[18] *Id.*



**Williams, Kastner & Gibbs PLLC**
805 SW Broadway, Suite 2440
Portland, OR 97205-3317
Telephone: 503-228-7967 • Fax 503-222-7261

department with a letter from her medical provider, which she describes as a "letter describing my specific disabilities as well as the workplace accommodations that I am requesting."[19] Plaintiff's email on December 29, 2022, confirms that no other action was taken by Plaintiff to receive an ADA accommodation prior to December 29, 2022, or after January 2, 2023, as there are no other emails in the chain.[20] On January 9, 2023, then superintendent James Owen notified Plaintiff that he was affirming Mr. Miller's recommendation for her dismissal and would be recommending Plaintiff's dismissal to the Centennial School Board on January 11, 2023.[21] On January 12, 2023, Plaintiff was notified of her dismissal of employment from Centennial.[22]

## III. RELEVANT PROCEDURAL HISTORY

On August 27, 2024, Plaintiff filed suit against Centennial in the U.S. District Court of Oregon. In her Complaint, Plaintiff alleged ten (10) different causes of action, which included the following:

(1) Title VII Gender and Sex Discrimination – 42 USC §2000e-2

(2) Title VII Gender Retaliation - 42 USC §2000e-3

(3) Gender, sex, and sexual orientation discrimination and retaliation

(4) Title I of the Americans with Disabilities Act – Discrimination

(5) Title I of the Americans with Disabilities Act – Retaliation

(6) ORS 659A.103 et.seq. – Oregon Rehabilitation Act

(7) Family and Medical Leave Act of 1993 – 29 USC §2601 et. seq.

(8) Oregon Family Leave Act – ORS 659A.150 et. seq.

---

[19] *Id.*
[20] *Id.*
[21] *Id.* at ¶ 14.
[22] *Id.* at ¶ 15.



**Williams, Kastner & Gibbs PLLC**
805 SW Broadway, Suite 2440
Portland, OR 97205-3317
Telephone: 503-228-7967 • Fax 503-222-7261

(9) Oregon Sick Leave Act

(10) ORS 659A.199 – Whistleblower Discrimination

Due to the complete lack of specificity within the Complaint as it related to the plethora of claims against Centennial, despite the fact that it consisted of fifty-four (54) pages and 231 individual paragraphs, Plaintiff agreed to amend her Complaint; Plaintiff's First Amended Complaint was filed on October 7, 2024.

However, Plaintiff's First Amended Complaint and overall posture was still riddled with issues, leading Centennial to file a Motion to Dismiss Plaintiff's First, Second, Third, Fifth, Sixth, Eighth, Ninth, and Tenth causes of action on November 13, 2024. This Court ultimately granted Centennials Motion to Dismiss in part, ordering that (1) Plaintiff's Fifth and Sixth claims for relief were to be dismissed for seeking to recover damages that were not available under the American Disabilities Act ("ADA") or the Oregon Rehabilitation Act "ORA"), with leave to amend; (2) Plaintiff's First, Second, and Third claims for relief were to be dismissed, with leave to amend; and (3) Plaintiff's Tenth claim for relief was dismissed due to the lack of causal link to Plaintiff's termination and the evidence relied upon by Plaintiff. In conclusion, this Court ruled that if Plaintiff failed to provide a Second Amended Complaint, her suit would move forward on the Fourth, Seventh, Eighth, Ninth, and Tenth claims for relief only.

On March 31, 2025, Plaintiff filed a Second Amended Complaint, which now included an eleventh cause of action (Wrongful Termination) and the addition of eighteen (18) more paragraphs. Centennial proceeded to file a Second Motion to Dismiss on April 24, 2025, targeting Plaintiff's First, Second, Third, Fifth, Sixth, Tenth, and Eleventh claim for relief, which was ultimately denied by this Court on December 12, 2025.



Williams, Kastner & Gibbs PLLC
805 SW Broadway, Suite 2440
Portland, OR 97205-3317
Telephone: 503-228-7967 • Fax 503-222-7261

## IV. LEGAL AUTHORITY

Under Fed. R. Civ. P. 56, summary judgment shall be granted if the records shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.[23] If the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.[24]

Once a motion for summary judgement is filed, the nonmoving party must present affirmative evidence setting forth the specific facts to demonstrate the existence of a genuine issue for trial.[25] The nonmovant's burden cannot be met by "speculation or guesswork."[26] As such, "a party's own speculation is insufficient to create a genuine issue of material fact . . . and a party cannot make it sufficient simply by finding an expert who is willing to assume its correctness."[27]

## V. LEGAL ARGUMENT

### A. Motion 1: Because Plaintiff cannot establish a prima facie case of discrimination, there is no genuine issue of material fact and Centennial is entitled to judgment as a matter of law on Plaintiff's First Claim for Relief

Title VII prohibits discriminating against any individual with respect to his or her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.[28] A plaintiff must first establish a prima facie case of discrimination either by direct evidence of discriminatory intent or on a presumption arising from the *McDonnel Douglas* factors established in *McDonnel Douglas Corp. v. Green*, 411 U.S. 792,

---

[23] Fed. R. Civ. P. 56(a); *Celotex Corp. v. Caterett*, 477 U.S. 317, 322-23 (1986).
[24] *Matsushita Elec. Indus. Co. v. Zeneth Radio Corp.*, 475 U.S. 574, 587 (1986).
[25] *Celotex*, 477 U.S. at 322-23.
[26] *Guidroz-Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001).
[27] *Stephens v. Union Pacific Railroad Co.*, 935 F.3d 852 (9th Cir. 2019).
[28] *Karthauser v. Columbia 9-1-1 Commc'ns Dist.,* 647 F. Supp. 3d 992 (D. Or. 2022).



**Williams, Kastner & Gibbs PLLC**
805 SW Broadway, Suite 2440
Portland, OR 97205-3317
Telephone: 503-228-7967 • Fax 503-222-7261

802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). A plaintiff may establish a prima facie case of discrimination indirectly by showing that: (1) she is a member of a protected class; (2) she was performing the job satisfactorily; (3) she suffered some adverse employment consequence; and (4) similarly situated individuals outside of her protected class were treated more favorably.[29]

If the plaintiff is able to establish a prima facie case, the burden then shifts to the employer to articulate a nondiscriminatory reason for the adverse employment action.[30] If the employer is able to do so, the burden shifts back to the plaintiff to show that the employer's nondiscriminatory reason is mere pretext.[31] A plaintiff may establish pretext either by directly persuading the court that a discriminatory reason more likely motived the employer or indirectly, through circumstantial evidence, that the employer's proffered explanation is unworthy of credence.[32] However, if a plaintiff relies on circumstantial evidence, that evidence must be specific and substantial to defeat an employer's motion for summary judgement[33] as the burden is higher to show pretext than to prove a prima facie case.[34]

Here, Plaintiff has woefully failed to present any direct evidence that Centennial had any discriminatory intent when it decided to terminate Plaintiff. This is not surprising as Plaintiff herself stated in her deposition that none existed,[35] which means that she must then establish her prima facie case using indirect evidence of discriminatory intent using the four (4) *McDonnell*

---

[29] *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Weil v. Citizens Telecom Services Co., LLC*, 922 F.3d 993, 1003 (9th Cir. 2019).
[30] *Karthauser*, 647 F. Supp. 3d at 992; *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817.
[31] *Id.*
[32] *Id.*
[33] *Coghlan v. American Seafoods Co. LLC*, 413 F.3d 1090, 1095-96 (9th Cir. 2005).
[34] *Karthauser,* 647 F. Supp. 3d at 992.
[35] *See* Decl. of K. Peterson, ¶ 16.



**Williams, Kastner & Gibbs PLLC**
805 SW Broadway, Suite 2440
Portland, OR 97205-3317
Telephone: 503-228-7967 • Fax 503-222-7261

*Douglas* factors. While factors one (1) and three (3) are undisputed, Plaintiff simply cannot satisfy element two (2) and four (4), which means that she cannot meet her burden of proof to establish a prima facie case for this claim. At and prior to Plaintiff's termination, she was not performing her job satisfactorily, as evidenced by the various communications and meetings shared between Plaintiff and Centennial where Centennial shared concerns and dissatisfaction with her performance, tardiness, and lack of attendance at mandatory meetings. Additionally, Plaintiff has failed to show the existence of other similarly situated individuals that were treated differently than her or circumstances that give rise to an inference of discrimination in the termination decision.

As such, there is no genuine of material fact that Plaintiff was not discriminated against based on her gender or sexual orientation and Centennial is therefore entitled to judgment as a matter of law.

**B. Motion 2: Because Plaintiff cannot establish a prima facie case of retaliation, there is no genuine issue of material fact and Centennial is entitled to judgment as a matter of law on Plaintiff's Second, Third, Tenth, and Eleventh Claims for Relief**

Courts analyze sex discrimination retaliation claims under Oregon law together with Title VII retaliation claims because the elements of a prima facie case under the Oregon law are substantially similar to those for retaliation under Title VII.[36] In establishing a prima facie case of Title VII retaliation, the plaintiff must make some showing sufficient for a reasonable trier of fact to infer that the defendant was aware that the plaintiff had engaged in protected activity.[37]

---

[36] *Karthauser*, 647 F. Supp. 3d at 992.
[37] *Id.*



Williams, Kastner & Gibbs PLLC
805 SW Broadway, Suite 2440
Portland, OR 97205-3317
Telephone: 503-228-7967 • Fax 503-222-7261

**1. Title VII**

To establish a prima facie case of Title VII retaliation, an employee must allege facts showing: (1) that the employee engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action.[38] "Protected activity" in the context of a Title VII retaliation claim includes the filing of a charge, filing of a complaint, or providing testimony on an employer's alleged unlawful practices.[39] For purposes of a Title VII retaliation claim, the mere fact that an employee is participating in an investigation or proceeding involving charges of some sort of discrimination does not automatically trigger Title VII retaliation protections; the underlying discrimination must be reasonably perceived as discrimination prohibited by Title VII.[40]

Essential to a causal link between the protected activity and the adverse employment action, under a claim for Title VII retaliation, is evidence that the employer was aware that the plaintiff had engaged in the protected activity.[41] However, mere knowledge of protected activity is not enough to establish causal connection between protected activity and adverse employment action, for purposes of retaliation claim under Title VII.[42] The plaintiff must also present evidence sufficient to raise the inference that her protected activity was the but-for cause of the adverse action, such as temporal proximity or evidence of retaliatory or discriminatory animus by the decisionmaker.[43]

---

[38] *Whitley v. City of Portland*, 654 F.Supp.2d 1194, 1213 (D. Or. 2009).
[39] *Karthauser*, 647 F. Supp. 3d at 992.
[40] *Id.*
[41] *Id.*
[42] *Id.*
[43] *Id.*



**Williams, Kastner & Gibbs PLLC**
805 SW Broadway, Suite 2440
Portland, OR 97205-3317
Telephone: 503-228-7967 • Fax 503-222-7261

As the case law cited here states, the fact that Plaintiff was participating in an investigation regarding alleged discrimination does not automatically mean it constitutes a protected activity for purposes of a Title VII retaliation claim; Plaintiff must prove that the underlying discrimination is discrimination prohibited by Title VII. Here, as outlined in detail above, Plaintiff cannot establish a prime facie case that she was discriminated against as defined by Title VII, either through direct or indirect evidence of discriminatory intent, which then also means she did not engage in protected activity. Without any protected activity, there is no causal link related to Plaintiff's termination. However, even if Plaintiff did engage in a protected activity, she still cannot prove that any causal link existed in relation to her termination, as there is ample documentation, evidence, etc. detailing that Plaintiff was terminated due to her consistent inability to perform her job satisfactorily.

**2. Whistleblower Retaliation**

Claims for whistleblower retaliation under ORS §659A.199 are statutory claims whose elements derive from the statutes.[44] "Loosely speaking, those whistleblowing statutes prohibit employers from retaliating against an employee as a result of the employee's report of certain improper activities. Whether the employee is protected depends upon an assessment of the employee's good faith or reasonableness attendant to that report."[45] If the trial court concludes that the record is such that no reasonable juror could find for the plaintiff on the issue of whether the employee held a reasonable belief that the employer violated the law, it is not an issue of fact for the jury."[46]

---

[44] *Karthauser*, 647 F. Supp. 3d at 992.
[45] *Id*. quoting *Hall v. State*, 274 Or. App, 445, 366 P.3d 345 (2015).
[46] *Id.*



**Williams, Kastner & Gibbs PLLC**
805 SW Broadway, Suite 2440
Portland, OR 97205-3317
Telephone: 503-228-7967 • Fax 503-222-7261

Here, as has been outlined in detail above, Plaintiff cannot prove that she was retaliated against by Centennial when they chose to terminate her employment due to her inability to perform her job satisfactorily. In addition to the reasons included within the termination letter issued to Plaintiff, Plaintiff herself suggests that reasons other than a report of a violation of law were the motivating factors in her termination.[47] Specifically, this Court noted that:

> "Maeve's allegations also suggest that Miller's recommendation and Owen's affirmance were based in part on (1) conduct that Maeve's previous supervisor (Scully) raised and deemed problematic months before Miller became Maeve's supervisor (i.e. absence reporting, meeting participation, etc.) and was beyond the scope of Maeve's flex-time arrangement with Scully, (2) conduct that Maeve appears largely to attribute to childcare and mental health issues, and (3) a statement from a security guard who witnessed and responded to the September 22, 2022 incident and believe that Maeve, Roache, and Gutierrez all behaved unprofessionally."[48]

As Plaintiff herself believes that her termination could have been due to any number of things, not solely in retaliation due to her reporting of a claim, no reasonable juror could find that Plaintiff held a reasonable belief that Centennial violated the law. A such, it is not an issue of fact for the jury and Centennial is entitled to judgment as a matter of law.

### 3. Wrongful Discharge

In Oregon, wrongful discharge serves as a narrow exception to the at-will employment doctrine where the discharge is against public policy.[49] If Plaintiff was terminated in retaliation for reporting violation of law or abuse of authority, such a termination would be against public

---

[47] *See* ECF No. 21 – Order at page 41 – 42.
[48] *Id.*
[49] *Franklin v. Clarke*, No. CIV. 10-00382-CL, 2011 WL 4024638 (D. Or. Sept. 9, 2011).



**Williams, Kastner & Gibbs PLLC**
805 SW Broadway, Suite 2440
Portland, OR 97205-3317
Telephone: 503-228-7967 • Fax 503-222-7261

policy.[50] As such, the elements of a wrongful discharge claim under Oregon law are simple: (1) there must be a discharge; and (2) that discharge must be wrongful.[51]

Here, while Plaintiff was terminated from her employment with Centennial, that termination was not wrongful. Instead, Plaintiff's discharge was based in truth and supported by facts showcasing that Plaintiff's personal life completely hindered her ability to perform her job. Centennial met with Plaintiff multiple times to try and work with her, but ultimately Plaintiff's performance just continued to decline, as Plaintiff herself was well-aware as described above.

As such, there is no genuine of material fact that Plaintiff was wrongfully discharged and Centennial is therefore entitled to judgment as a matter of law.

**C. Motion 3: Because Plaintiff cannot establish a prima facie case of discrimination or retaliation under the ADA or ORS 659A103, there is no genuine issue of material fact and Centennial is entitled to judgment as a matter of law on Plaintiff's Fourth, Fifth, and Sixth Claim for Relief**

**1. Discrimination**

Title I prohibits discrimination based on disability against qualified individuals in the terms and conditions of their employment.[52] As the burden of establishing a prima facie case of disability discrimination rests with the plaintiff, a plaintiff must show the following: (1) she is a disabled person within the meaning of the statute; (2) she is a qualified individual with a disability; and (3) she suffered an adverse employment action because of her disability.[53]

An individual is "disabled" within the meaning of the American with Disabilities Act ("ADA") if she has a physical or mental impairment that substantially limits one or more major

[50] Id.
[51] *Krouse v. Ply Gem Pac. Windows Corp.,* 803 F. Supp. 2d 1220 (D. Or. 2011).
[52] *Kowitz v. City of Portland*, No. 3:16-CV-00598-SI, 2018 WL 3521394 (D. Or. July 20, 2018)
[53] Id; *Mayo v. PCC Structurals, Inc.*, 795 F.3d 941, 944 (9th Cir. 2015).



**Williams, Kastner & Gibbs PLLC**
805 SW Broadway, Suite 2440
Portland, OR 97205-3317
Telephone: 503-228-7967 • Fax 503-222-7261

life activities or if her employer regards her as having such an impairment.[54] A "substantial limitation" is one that "limits the ability of an individual to perform a major life activity as compared to most people in the general population."[55]

For claims brought in relation to the ADA, the Ninth Circuit has established that a plaintiff must establish that *her disability* substantially limited her ability to work. For example in *Neal v. Kraft Foods Global, Inc.,* the Ninth Circuit concluded that there was no triable issue of material fact as to whether the plaintiff was disabled because the plaintiff did not provide any evidence of a substantial limitation in her ability to work from which a jury could find she was disabled.[56] In *Wong v. Regents of University of California*, the Ninth Circuit also concluded that merely having an impairment does not make on disabled for purposes of the ADA.[57]

Here, Plaintiff alleges that she was discriminated against because of her "disability," yet she has again failed to showcase that her ability to perform a major life activity as compared to most people in the general population is limited, making her "disabled" for purposes of her ADA claims. Plaintiff also failed to showcase that her mental conditions substantially limited her ability to work, which the Ninth Circuit has already established as being required when bringing ADA claims.

Specifically, Plaintiff was informed on multiple occasions regarding the steps she would need to take if she wanted to request an accommodation in relation to any sort of disability. Unsurprisingly, Plaintiff either never submitted the required paperwork or only submitted it after

---

[54] *Hoppman v. Liberty Mut. Ins. Co.*, No. 3:17-CV-00402-BR, 2018 WL 1769364 (D. Or. Apr. 12, 2018), aff'd on other grounds, 774 F. App'x 418 (9th Cir. 2019).
[55] *Id.*
[56] *Neal v. Kraft Foods Global, Inc.*, 379 F. App'x 632, 634 (9th Cir. 2010).
[57] *Wongs v. Regents of University of California*, 410 F.3d 1052, 1067 (9th Cir. 2005).



**Williams, Kastner & Gibbs PLLC**
805 SW Broadway, Suite 2440
Portland, OR 97205-3317
Telephone: 503-228-7967 • Fax 503-222-7261

she was informed that she was about to be terminated due to poor performance, in a faulty attempt to establish some sort of retroactive application of her accommodation request. However, in the one document she did submit to Centennial's HR department regarding any sort of disability, which was a letter from her medical provider Galen Cohen provider **after** she received her pre-termination notice, nowhere does it state that (1) Plaintiff is disabled, (2) that any one of her diagnoses have substantially impacted one or more major life activities in comparison to most people in the general population; or (3) that any one of her diagnoses have substantially impacted her ability to work in comparison to most people in the general population. While the letter outlines "workplace accommodations [that] should be considered," nowhere in the letter does it state that Plaintiff would be unable to perform her work duties without them. Specifically, the accommodations recommended by Plaintiff's medical provider are as follows:

> (1) Flex time available for non-teaching times, which could include late arrival and late dismissal;
>
> (2) Attendance at staff meetings via virtual methods, with video camera optional
>
> (3) Preparation materials for staff meetings given by Administrator in advance
>
> (4) Ability to contact someone via radio, to have the classroom covered briefly for bathroom breaks

Essentially, Plaintiff was seeking accommodations that accounted for her inability to show up to work on time and the fact that she chose not to attend staff meetings; two infractions that a large portion of people in the general population also commit, whether or not they have a "disability." Because Plaintiff has failed to prove that she is disabled as defined by the ADA and the Ninth Circuit, there is no way she could have been discriminated against by Centennial for a disability. In the event that this Court finds that Plaintiff was disabled under the ADA, she still



**Williams, Kastner & Gibbs PLLC**
805 SW Broadway, Suite 2440
Portland, OR 97205-3317
Telephone: 503-228-7967 • Fax 503-222-7261

cannot prove that she suffered an adverse employment action because of that disability, when she was already in the process of being terminated prior to informally notifying HR that she wanted to learn more about the accommodation request process.

**2. Retaliation**

As outlined in detail above, before a person can claim that they have been retaliated against because of a disability, they must first establish that they are disabled under the ADA. Once an individual has established that a disability exists under the ADA, she must then establish a prima facie case for retaliation.[58] The elements to establish a prima facie case of retaliation under the ADA are identical to those required when bringing a claim of retaliation under Title VII; that is, the plaintiff must show (1) involvement in a protected activity; (2) an adverse employment action; and (3) a causal link between the two.[59] Protected activity occurs under the ADA if an individual opposes any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.[60] While a request for a reasonable accommodation of a disability qualifies as protected activity under the ADA, a causal link must still exist between that protected activity and the adverse employment action.

Here, Plaintiff cannot  prove that (1) she was disabled according to the ADA; (2) she engaged in a protected activity, since she never completed the process of even requesting an accommodation; and (3) she was terminated for a myriad of reasons that had nothing to do with

[58] *Arnold v. Pfizer, Inc.,* 970 F. Supp. 2d 1106 (D. Or. 2013).
[59] *Id.*
[60] *Id.*



**Williams, Kastner & Gibbs PLLC**
805 SW Broadway, Suite 2440
Portland, OR 97205-3317
Telephone: 503-228-7967 • Fax 503-222-7261

her alleged disability. As such, there is no genuine issue of material fact and Centennial is entitled to judgment as a matter of aw.

**D. Motion 4: Because Plaintiff cannot establish that she was terminated as a result of her taking leave, there is no genuine issue of material fact and Centennial is entitled to judgment as a matter of law on Plaintiff's Seventh, Eighth, and Ninth Claim for Relief**

Oregon's Family Leave Act ("OFLA") prohibits an employer from (1) denying family leave to an eligible employee or (2) retaliating or in any way discriminating against an employee because the employee has inquired into OFLA leave, submitted a request for OFLA leave, or invoked any provision of the OFLA.[61] However, OFLA does not explicitly provide a cause of action for interference.[62] Instead, the OFLA is Oregon's analogue to the Family Medical Leave Act ("FMLA") and "shall be construed to the extent possible in a manner that is consistent with any similar provisions of the FMLA.[63] Thus, a claim for interference under the OFLA largely resembles an interference claim under the FMLA[64], and if an OFLA claim is rooted in facts constituting an interference claim under FMLA, it *may* be properly brought under the OFLA.[65]

To establish an FMLA interference claim, a plaintiff must show: (1) eligibility for FMLA leave; (2) the defendant was an employer subject to FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of their intention to take FMLA leave; and (5) the plaintiff was denied benefits to which they were entitled under FMLA.[66]

---

[61] *Canning v. Washington Cnty.*, 781 F. Supp. 3d 1103 (D. Or. 2025); ORS 659A.183.
[62] *Id.*
[63] *Johnson v. Jondy Chemicals, Inc.*, No. 3:16-CV-01734-MO, 2017 WL 1371271 (D. Or. Apr. 13, 2017).
[64] *Id.*
[65] *Canning*, 781 F. Supp. 3d at 1103.
[66] *Id.*



**Williams, Kastner & Gibbs PLLC**
805 SW Broadway, Suite 2440
Portland, OR 97205-3317
Telephone: 503-228-7967 • Fax 503-222-7261

The Ninth Circuit has held that nothing in the FMLA prohibits an employer from disciplining an employee for noncompliance with the company's usual and customary policies.[67] Even if an employee properly invoked the FMLA and OFLA for their absence, that issue is somewhat beside the point; the FMLA does not excuse an employee from following the employer's normal request and/or call-in procedures, absent an emergency situation.[68]

Here, the truth is that Plaintiff could not get the required paperwork submitted in accordance with the existing policies, a theme throughout her employment. Centennial is within its rights to require employees, including a nearly-transgender one, to complete a form in order to get leave, which Centennial ultimately and repeatedly always approved for Plaintiff. Despite this, Plaintiff now alleges that even though Centennial constantly granted her improper leave requests, and that she was additionally failing to satisfactorily perform her job functions, that Centennial terminated her for requesting leave. Similar to the detailed analysis discussed at length in this motion, and ample evidence supporting these points, Plaintiff was terminated for no reasons other than her inability to do her job. As such, there is no genuine issue of material fact and Centennial is entitled to judgment as a matter of law.

/ / /

/ / /

/ / /

/ / /

---

[67] *Shelton v. Boeing Co.*, 702 F. App'x 567, 568 (9th Cir. 2017).
[68] *Allred v. Boise Cascade Wood Prods., LLC*, No. 1:17-cv-01534-CL, 2018 WL 4040238, at *5 (D. Or. July 18, 2018).



**Williams, Kastner & Gibbs PLLC**
805 SW Broadway, Suite 2440
Portland, OR 97205-3317
Telephone: 503-228-7967 • Fax 503-222-7261

## VI. CONCLUSION

Based on the foregoing, Centennial requests that the Court grant its Motion for Summary Judgment in full.

DATED this 29th day of June, 20266.

WILLIAMS, KASTNER & GIBBS PLLC

s/ Kurt C. Peterson
Kurt C. Peterson, OSB #980065
*Attorney for Defendant*



**Williams, Kastner & Gibbs PLLC**
805 SW Broadway, Suite 2440
Portland, OR 97205-3317
Telephone: 503-228-7967 • Fax 503-222-7261